## Standard Accident Insurance Company v. Strunk.

(Decided May 27, 1927.)

### Appeal from Whitley Circuit Court.

1.  Witnesses.—Admitting widow's testimony concerning husband's condition in her suit against insurance company on his accident policy held error under Civil Code of Practice, section 606, relating to competency of witnesses.

2.  Insurance.—Refusal of peremptory instruction for insurer in suit on accident policy held error, where testimony failed to show accident occurred after issuance of policy insuring plaintiff's deceased husband against loss or death from "bodily injuries effected directly, exclusively, and independently of all other causes through external, violent, and accidental means."

3.  Insurance.—Refusal of peremptory instruction for insurer in suit on accident policy held error, where evidence showed death resulted from cancerous condition for which deceased was operated on before issuance of policy insuring against injuries "effected directly, exclusively, and independently of all other causes through external, violent, and accidental means."

4.  Insurance.—Mere speculative possibility in physicians' testimony that cancerous condition resulting in insured's death might have been caused by accident held not sufficiently substantial, relevant, and convincing to warrant submission of suit on accident policy to jury, where same witnesses testified to opinion that death resulted from condition prior to issuance of policy.

5.  Trial.—To require submission to the jury under the scintilla rule, evidence must be substantial and relevant, tending to induce conviction, and not merely a speculative possibility.

TYE & SILER for appellant.

T. B. CULTON, J. B. WALL and LEWIS & LEWIS for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Reversing.

James D. Strunk was employed as a helper in the machine shops of the Louisville & Nashville Railroad Company at Corbin, Ky. In April, 1923, he went to a hospital in London, Ky., and was there operated on by Drs. H. V. Pennington and William Johnson, and they removed his right testicle, which was greatly enlarged, and which condition was produced, according to those physicians, by a cancerous condition. After remaining at the hospital for some days, he was carried to his home about 18 miles from Corbin and apparently recovered from the operation.

On July 1 the same year he returned to his work and continued to perform it until September 14.  On that day he was helping and working with E. L. Walker, a machinist in the employ of the railroad company, and whose duty it was to look after the repair of railroad engines. The immediate work being performed by the two on that day was that of repairing an engine which had been placed on a track running over a pit, and the workmen were in the pit making some repairs and adjustments of the brakes of the engine from beneath it.  The tools that were used in performing that work, according to the testimony of Walker, were a Stillson wrench, a hammer, and a cold chisel, the wrench being what is generally known as a monkey wrench, and also on occasions a "little small pinch bar."  About 9 o'clock in the morning of September 14 Walker had occasion to go out of the pit, and shortly thereafter Strunk came out of it and said to Walker, "I feel so bad."  He went to his boarding house and obtained leave of absence from his foreman, and the next day went to his residence about 18 miles distant, and was treated from that time on by Dr. Ratliff, the neighborhood physician.

About October 20th Drs. Pennington and Johnson, who had operated on him and removed the cancerous growth in April previous, called to see him, and were with him as much as or more than one hour.  Dr. Pennington was asked and answered these questions:

"Q.  Tell the court with what he was suffering at that time?  A.  He was suffering from a malignant condition and cancerous condition of the inguinal glands and the liver.

"Q.  Tell the court whether or not in your opinion he died (which was on November 6 thereafter) as a result of this liver disease and diseases of the inguinal glands?  A.  That is my opinion."

He then testified that he made an examination of the decedent's body and found no evidence or indication of any injury, trumatic or otherwise, and stated that the inguinal gland was the one in the groin.  He also stated that at the time decedent underwent the operation at his hospital the patient, in giving a history of the diseased condition of the removed organ, said something about having received a lick on it some time within a year prior thereto, and on his visit to the home of decedent the latter

again said something about receiving a lick from some kind of accident that, according to the recollection of the witness, occurred after the operation, but he was not positive as to that. However, he nowhere stated that decedent fixed any date or particular time when the second accident or lick, if any, occurred, or was received by him. Witness was finally asked:

"Q. Tell the court whether or not in your opinion his death was a recurrence of the trouble for which he was operated on at your hospital in April, 1923? A. We strongly suspected that that was true."

Dr. Johnson corroborated substantially Dr. Pennington in the latter's testimony as above outlined. During the course of the examination of this witness he was asked:

"In your opinion as a practicing physician and surgeon for a period of 30 years, and having seen the deceased, James D. Strunk, in October, 1923, and having examined him at that time and attended him also in March and April, 1923, at the time he was operated on, tell the court in your opinion what caused his death? A. At that time it was my opinion that this was malignant or cancer, what we would term recurrence by metassis from the original trouble, that this was a recurrence. That is the diagnosis that I made."

He also stated that upon his last visit to the patient in October he saw no evidence of traumatic or other injury. With reference to the injury received by decedent *prior* to the *operation,* this witness said:

"He claimed to have received a strain in the back and an injury to this testicle which necessitated him being laid off by the company for a period of time, and then went back to work before the swelling was entirely out of the testicle, and this enlargement gradually came on until it reached the stage he had to quit and come home."

The witness also testified substantially as did Dr. Pennington with reference to the alleged second injury received by decedent as told by him on the last visit of witness in October, 1923, but gave no date as to when the injury, if any, occurred or the extent or effects of it, and

both physicians testified that, while it was possible for the cancerous condition they found on their last visit to have been precipitated or produced by a traumatic injury, they did not believe that the conditions they found would have developed so suddenly. Witness was then asked and answered:

"And, if I understand you, when you visited him the last time in his sickness, and when you and Dr. Pennington were trying to examine and properly diagnose his case, he then told you about having received this injury, or having received an injury, from which he was then suffering, or which had brought about his condition. A. He gave us that history, or the history of receiving an injury."

Dr. Ratliff was decedent's regular attending physician after the latter quit work and went home, and he testified that decedent was suffering with cancer of the liver, and that he died as a result thereof; and witness was *never* informed by decedent of the happening of any accident to him. Mrs. Strunk testified, over objections and exceptions, as to the enlarged and inflamed physical conditions she found on the body of her husband after his return home following his suspension of work on September 14.

On August 2, 1923, about one month after decedent returned to his work following the operation in the previous April, he applied for and obtained an accident insurance policy with the appellant and defendant below, Standard Accident Insurance Company. The policy insured decedent "against loss resulting from bodily injuries effected directly, exclusively, and independently of all other causes through external, violent, and accidental means," etc., and, in case of death, inflicted in the manner described, the full amount of the policy ($2,000) would be paid to the insured's widow, who is the appellee and plaintiff below, Mrs. Bettie Strunk. About the first of the year 1924 plaintiff for the first time discovered the existence of the policy, and she made informal demand of defendant for the payment to her of its amount, and in doing so she claimed that her husband sustained the character of accident described in the policy by lifting some heavy object and thereby accidentally straining himself. She did not make formal proof of her alleged loss until nearly a year after her husband's death, and

in that proof she claimed the same character of accident. Defendant declined to pay on the ground that decedent's death was not one of the risks assumed by the policy, but that, on the contrary, he died from the malignant disease of cancer. That refusal was followed by this suit, filed by plaintiff against defendant in the Whitley circuit court. The latter's demurrer to the petition was overruled and its answer was a denial of the averments of the petition. Just before the submission of the cause, and about two years after decedent's death, an amended petition was filed in which it was averred that the accident sustained by decedent and which produced his death was inflicted by a blow from some tool that he was handling in the performance of his work. The amendment was denied, and upon trial had before a jury there was a verdict in favor of plaintiff for the full amount of the death benefit in the policy, and, defendant's motion for a new trial having been overruled, it prosecutes this appeal, urging a reversal of the judgment on a number of grounds; but since it is apparent that plaintiff failed to prove her cause of action, we have concluded to discuss none of the relied-on grounds except those hereinafter mentioned.

Objection was made to the testimony of plaintiff upon the ground that under the provisions of section 606 of the Civil Code of Practice she was an incompetent witness, and which under the principles announced in the two very recent cases of Equity Life Assurance Society v. Bailey, 203 Ky. 339, 262 S. W. 280, 39 A. L. R. 160, and North American Accident Insurance Co. v. Caskey's Adm'r, 218 Ky. 750, 292 S. W. 297, seems to be well taken, and the court erred in admitting the testimony, although as given it would not affect the merits of the case as hereinafter pointed out.

It will of course be conceded that, in order for plaintiff to maintain her action, she must prove (a) that her husband sustained an injury after the policy was issued and "by external, violent, and accidental means;" and (b) that his death was produced by such accident "independently of all other causes." We have searched the record from beginning to end, and there is no evidence therein either competent or incompetent that the decedent sustained any sort of accident *after* the issuing of the policy sued on. At most, and taking the testimony of Drs. Pennington and Johnson unaffected by any qualify-

ing expressions contained therein, decedent stated to them on their last visit to him that prior to that time he had sustained some sort of accident which he vaguely and indefinitely described. However, the two physicians positively stated that no date was fixed as to the time of such alleged accident, which of course had to be at a time following the issuing of the policy in order to be covered thereby. It requires no argument, therefore, to conclude that under the testimony as thus presented the defendant's motion for a peremptory instruction in its favor should have been sustained.

Independently, however, of that defect in the proof, it is manifest that under the law as declared by us in numerous cases, among which are Ætna Life Insurance Co. v. Bethel, 140 Ky. 609, 131 S. W. 523, and Pack v. Prudential Casualty Co., 170 Ky. 47, 185 S. W. 496, L. R. A. 1916E, 952, decedent's death in this case could not be said to have resulted from his second alleged accident, "independently of all other causes," even if it were shown that it was sustained *after* the policy was issued. In the Bethel case the accident was proven by eyewitnesses, and the medical testimony connecting its results with the later developed conditions was as strong or stronger than is found in this case, upon the same point. Briefly stated, the facts therein were that, prior to the alleged accident, the insured, Dr. Bethel, was suffering from auto-intoxication. His accident consisted in falling from his buggy as he was attempting to alight therefrom. The physicians tstified that the fall might aggravate the conditions that produced the auto-intoxication. The latter affliction afterwards developed and caused his death. In holding that the action could not be sustained in favor of the beneficiary, and in sustaining defendant's motion for a peremptory instruction, we said in that opinion:

"The only witness who testified that the auto-intoxication was due to the fall is Dr. Hancock, and the effect of his testimony is greatly weakened by the fact that, although three other physicians were called in consultation with him, he did not mention to any of them the fact that . . . in the preceding February Dr. Bethel suffered with an attack of auto-intoxication that was not produced by an accident, injury, or fall, and that his symptoms then resembled the symptoms from which he suffered in April. This evidence, and we have stated it quite

fully, was not sufficient to sustain the verdict. It was indispensable to a recovery that the evidence should show that the fall 'independently of all other causes' produced the death of Dr. Bethel. Of course, if the accidental fall was the proximate cause of the auto-intoxication, which was the immediate cause of his death, then under the terms of the policy his death was caused 'by external, violent, and accidental means independently of all other causes.' But the mere fact that he fell from the buggy was not sufficient to warrant a recovery, unless the evidence showed that the auto-intoxication was produced independently of other causes by the fall, and it is at this vital point that the evidence for the appellee fails. It is true that there is some evidence that auto-intoxication may be produced by a fall; but, with the exception of the statement of Dr. Hancock, there is no evidence that the auto-intoxication in issue was produced by the fall, and his statement does not measure up to the requirements of the policy. The fall may have contributed in some degree to produce the auto-intoxication, but this is not enough.''

Further along in the opinion we quoted with approval this excerpt from the case of Fidelity & Casualty Co. v. Cooper, 137 Ky. 544, 126 S. W. 111:

''If the injury or death is due to an accident without the intervention of any diseased condition of the body, the company is liable. It is not liable where the injury or death happened in consequence of the disease or bodily infirmity, and not of the accident, or where it is due both to the accident and disease.''

Other cases from this court that were relied on by the beneficiary under the policy there involved were referred to, and their nonapplicability pointed out. The Pack case followed the rule as announced in the Bethel opinion, and each of them is bottomed upon the fact that the liability sought to be imposed is a contractual one, and must be brought within the limitations of the terms of the contract, and which terms are that the death under an accident policy like this must result ''independently of all other causes.''

But it is argued by counsel for plaintiff that the testimony of Drs. Pennington and Johnson was sufficient to authorize the jury to find that the cancerous condition which they found on their last visit to the patient could have been and was produced by a prior accident sustained by the decedent, or at least their evidence constituted a scintilla of proof authorizing the submission of the case to the jury on that issue. However, the same could have been said with equal or greater propriety with reference to the testimony in the Bethel case, wherein we held, as above pointed out, that there was a failure of proof. The facts in that case are very much parallel to those in this one. The insured therein had suffered from the disease with which he finally died before sustaining the accident, just as Strunk in this case was operated on before the issuing of the policy for the same affliction that finally killed him. Besides, the scintilla rule means more than a mere speculative possibility. It has been defined by us to include "evidence of substance and relevant consequence tending to induce conviction and having the quality of proof." Wiggington v. Wiggington, 194 Ky. 385, 239 S. W. 455, Langford's Ex'r v. Miles, 189 Ky. 515, 225 S. W. 246, and Poll v. Patterson, 178 Ky. 22, 198 S. W. 567. In the latter case, with reference to the scintilla rule, we said:

> "The scintilla rule has never been given the effect of furnishing or supplying proof when there is none. Neither can it be permitted, nor was it intended by the law, through it, to elevate a mere chimerical probability to the dignity of proof."

It is true that the two physician witnesses in this case stated, in substance, that it was possible for a cancerous condition to be produced by a traumatic injury inflicted by a stroke or forceable contact, but they furthermore said that the conditions they observed on their last visit could not have been so suddenly produced, and each of them stated that such conditions according to their opinion were the natural consequences of the same condition they found when they performed the operation in April prior thereto. Clearly, it cannot be said that decedent's death resulted from the alleged accident relied on "independently of all other causes," and the court also erred in not sustaining defendant's motion for a peremptory instruction on this last discussed ground.

Wherefore, the judgment is reversed, with directions to set it aside and grant the new trial, and for proceedings consistent herewith.