## STATE v. HALL.

### No. 10207.

Court of Civil Appeals of Texas. Galveston.

Nov. 5, 1934.

Rehearing Denied Dec. 6, 1934.

K. C. Barkley, of Houston (Bryan Suhr, Bering & Bell, E. H. Suhr, and Chas. W. Bell, all of Houston, of counsel), for appellant.

Peden, Johnson & Peden, of Houston, for appellee.

GRAVES, Justice.

This statement—though prolix—made by the one and adopted by the other of the litigants, correctly reflects the reaches of the cause as presented to this court, except that the life of this "Enabling Act," which became effective on March 6, 1934 (Acts 1934 [2d Called Sess.] c. 19, §§ 1–9 [Vernon's Ann.

Civ. St. art. 165—1]), was thus limited in the last clause thereof: "This Act shall take effect and be in force from and after its passage for a period of two (2) years." Acts 1934 (2d Called Sess.) c. 19, § 10.

"This suit was filed by the State of Texas at the instance of W. M. Blanton, J. H. Studdert, L. J. Lindell, J. W. Canada and B. E. Stallones, constituting the Milk Industry Board of Harris County, Texas.

"Said Board was organized under the provisions of Title Four (4), Chapter Ten (10) of Article 165, Civil Statutes of Texas, 1925, effective March 6, 1934, passed by the 43d Legislature of the State of Texas. See General and Special Laws, 43d Leg., 2d Called Session, p. 56.

"The purpose of the suit was to obtain an injunction restraining the appellee, Hall, from violating the terms and provisions of said Act and of the Marketing Agreement and Code of Fair Practices of Harris County, Texas, adopted under the provisions of the Act referred to.

"It was alleged in the petition that under the provisions of said Act there had been elected and organized in Harris County, a county having a population in excess of 350,000 inhabitants according to the last preceding Federal census, for the purpose of defining and undertaking to eliminate unfair competition and practices in the production and distribution of milk and milk products, a Board, the members of which, named above, were duly qualified and approved in accordance with the terms of such Act. It was further alleged that in accordance with the provisions of said Act, representative groups engaged in the milk industry in Harris county submitted to said Board a code or agreement of fair competition and trade practices, that notice of a hearing on said proposed code was given to all interested parties and that a hearing was held on March 19th, 1934, attended by a large number of people interested, including persons engaged in the milk industry and consumers, and after a full and public hearing on said proposed code and after same had received the approval on matters affecting distributors and producers of the required percentage and volume, the Milk Industry Board of Harris County duly approved said code or agreement on March 21, 1934. A copy of the code was attached to the petition as an exhibit.

"It was further alleged that the code fixed a minimum price, among other things, at which milk and milk products might be sold as shown by the exhibit, and that the code became effective on April 1st, 1934.

"It was further alleged that the appellee, Hall, applied to the Board for authority to engage in the milk industry in Harris County on March 31st, 1934, and that a certificate was issued to him on such date. That thereafter the appellee violated the terms and provisions of the code by selling milk at prices less than the minimum fixed by the code and he was thereafter, on May 7th, 1934, given notice to appear before the Board on May 12th, 1934, to show cause why his certificate should not be revoked or suspended in accordance with the terms and provisions of the Act. That the hearing was held on May 12th, 1934, and appellee's certificate was suspended by the Board. That thereafter, on May 16, 1934, appellee made affidavit that he himself had not violated the terms and conditions of the code and that he would not violate the code in the future or permit his employees to do so, whereupon the suspension of his certificate was rescinded by the Board and the appellee was again authorized to engage in the milk industry in Harris County.

"That on May 21st, 1934, the appellee again violated the code by selling milk at less than the minimum price prescribed by the Code and that on May 22nd, 1934, the Board again gave notice to appellee to appear before it on May 28th, 1934, to show cause why his certificate should not be revoked or suspended, and thereupon a meeting of the Board was held on May 28th, 1934, and said Board entered an order suspending such certificate. A notice of such action was given to appellee. That appellee by reason of such suspension of his certificate was and is prohibited by law from engaging in the milk industry, but that notwithstanding such fact he continued, and threatened to continue, to engage in the milk industry in Harris County. In this connection it was alleged that he sold milk in Harris County to various parties after the suspension of his certificate of authority.

"It was further alleged that the Act referred to was enacted to provide for the general welfare in an emergency existing by cooperating with the Federal Government in making effective the provisions of the National Agricultural Adjustment Act [7 USCA § 601 et seq.] and the National Industrial Recovery Act [48 Stat. 195] within the State of Texas with reference to producers and distributors of milk and milk products to the end that disorganization of the dairy indus-

try might be corrected and the value of this specialized agricultural commodity stabilized; that at the time of the adoption of such code and for some years prior thereto the milk industry was in hopeless chaos with individual producers and individual distributors of milk and milk products selling and offering for sale milk and milk products at prices less than the cost of production. This so demoralized the condition of the market of milk that the overwhelming majority of persons engaged in the milk industry had to conduct their business at a loss, ultimately resulting in financial loss and ruin. That the code was adopted and approved in order to stabilize the market of milk, eliminate unfair competition and practices in the production and distribution of milk and milk products, and the code at the time the suit was filed had achieved, and was achieving, that result except in so far as appellee prevented it by violating same.

"It was further alleged that unless the appellee was restrained from continuing to violate the code and Act the efforts of the vast and overwhelming majority of producers and distributors of milk to stabilize the industry would be fruitless and that the entire milk industry in Harris County would suffer irreparable injury and loss unless appellee was restrained from continuing to violate the code and law, for which there exists no complete and adequate remedy at law. The prayer of the petition was for a temporary injunction restraining appellee from engaging in the milk industry and from selling milk in Harris County without first having obtained a valid and effective certificate from the Milk Industry Board in full force and effect, and further that appellee be restrained from selling milk in Harris County for prices less than those provided for in the code, and for a permanent injunction upon final hearing.

"A hearing on the petition for injunction was set down for July 25th, 1934. On July 23rd, 1934, appellee filed his original answer, consisting of a general demurrer, general denial and special answers, setting up the alleged invalidity of the Act above referred to on the grounds that:

"(a) The Act is a local or special law in that Harris County is the only County in the State of Texas which could be affected by the Act in that it is the only County in the State having a population of 350,000 according to the last preceding Federal census;

"(b) That notice for such legislation was not given as required by Section 57, Article 3, of the Constitution of the State of Texas;

"(c) That the Act is violative of Section 19, Article 1 of the Constitution of the State of Texas;

"(d) That an enforcement of the code would amount to a taking of appellee's property without due process of law;

"(e) That the Act is in conflict with and contrary to anti-trust laws of the State of Texas.

"(f) That the Act undertakes to delegate to the Milk Industry Board of Harris County legislative authority, in that the prices fixed by the Board are discriminatory, confiscatory, and that the Act is void in that it delegates to the Board legislative, judicial and executive powers.

"After due notice to appellee the hearing was had on July 25th, 1934.

"On the hearing it was undisputed and agreed by the parties that the members of the Milk Industry Board of Harris County, to-wit, W. M. Blanton, J. H. Studdert, B. E. Stallones, L. J. Lindell, and J. W. Canada, were elected in accordance with the Act above referred to, and upon which this suit was predicated, and that such members were approved by the Commissioner of Agriculture of the State of Texas as provided in the Act, on the dates respectively referred to in Plaintiff's Original Petition.

"It was further agreed and stipulated that notice of a hearing on the proposed code (later adopted) was given to all interested parties as required by law, that a hearing on same was held and attended by a large number of people interested, including persons engaged in the milk industry and consumers, and that after a full, open and public hearing on said code or agreement, and after the code had received the approval on matters affecting the distributors, and on matters affecting the producers, of the required statutory percentages of each, both as to number and volume, the Milk Industry Board of Harris County duly approved the code on March 21, 1934, and that after such approval notice was given by publication in a newspaper of general circulation in Harris County published in the City of Houston that such code would become effective on the 1st day of April, 1934, and that certificates were available to applicants for authority to engage in the milk industry in Harris County. The copy of the code attached to Plaintiff's Petition as 'Exhibit A' was introduced in evidence, and it was stipulated and agreed that the Code of Fair Practices and Marketing Agreement was duly agreed upon and adopted under the pro-

visions of the Statutes of the State of Texas, all as alleged in Plaintiff's Original Petition.

"It was further agreed and stipulated that appellee Hall on March 31, 1934, applied to the Board for, and was granted, a certificate of authority to engage in the milk industry in Harris County, Texas, and there was introduced in evidence the general form of such certificate.

"It was also undisputed and accordingly so stipulated that the prices set out in the code were fixed and agreed upon, and the code adopted in accordance with the Act referred to above.

"It was further agreed that the population of Harris County (the largest county in point of population) according to the 1930 Federal census, was 359,325; that the next largest county at such time was Dallas County, which had a population according to the 1930 Federal census of 325,791, and that the next county in population at such time was Bexar County, which had 292,533 inhabitants.

"The undisputed testimony of the witnesses was to the effect that prior to the enactment of the Act or Statute above referred to, the milk industry in Harris County was in a very chaotic condition; that the price of milk had dropped to about 5 cents per quart, and that in some places milk was being sold at the rate of three quarts for 10 cents; that the effect upon the producer of milk of such condition was disastrous prior to the enactment and adoption of the code, and that if the situation then prevailing had continued longer, the smaller producers would have gone out of business; that prior to the enactment of the Act, and adoption of the code in Harris County, the prices of milk and milk products were not stable, and that because of such fact producers went into debt because of their inability to obtain the cost of production; that there was constant price cutting, attended at times by physical violence; that the situation was publicly known as a 'milk war', and that the milk was being dumped on the streets in Harris County.

"It was further undisputed that since the passage of the Act and adoption of the code, conditions in the milk industry in Harris County changed markedly for the better; that prices have become uniform and persons engaged in the milk business have, since the adoption of the code, 'been able to pay their feed bills and live a little more decently, and make a little more headway on their indebtedness'.

"Appellant showed by uncontradicted evidence that appellee, Hall, was given due no-

tice to appear before the Board to show cause why his certificate of authority should not be revoked, and that such meeting was held and the evidence presented and considered by the Board that appellee had sold milk at less than the price fixed by the code; that appellee and his counsel were present at the hearing, and that the meeting of the Board was recessed in order to give Mr. Hall an opportunity to be heard further; that at the recessed meeting appellee's certificate was suspended. It was further undisputed that on May 16th, 1934, appellee, Hall, subscribed and swore to an affidavit stating that he would not in the future violate any terms, conditions or provisions of the code for the purpose of inducing the Board to revoke its order suspending his certificate, and that on Nov. 17, 1934, appellee's certificate was restored to him.

"It was also undisputed that subsequently, on May 22, 1934, appellee was again given 'due notice' as required by the Act, to again appear before the Board, such notice having been introduced in evidence. That pursuant to such notice a meeting was held on May 28, 1934, and that at such meeting appellee's certificate of authority was suspended for cause. That at such meeting testimony was heard and evidence considered by the Board, including an affidavit by one Jesus Gallardo, which was offered in evidence, and that appellee's certificate has never been reinstated since its suspension.

"It is further undisputed that subsequent to the suspension of appellee's certificate, and while same was in a state of suspension, appellee continued to carry on the milk business and sold milk in Harris County, according to the undisputed evidence of the witnesses, Jesus Gallardo, Adelina Martinez, and Lawrence Sanchez.

"At the close of all the testimony, and after both sides had rested, appellee filed a trial amendment setting up that appellant should not be permitted to maintain the suit for the reason that the Act above referred to contains a penal provision.

"On July 26, 1934, after having heard the evidence and argument thereon, the Court entered its order denying the temporary injunction, to which order appellant then and there in open court excepted and gave notice of appeal to this Honorable Court.

"The appellant, the State of Texas, under its statutory exemption, perfected its appeal within twenty days to this Honorable Court without filing bond, and the case is now properly before this Court on the single question

of the correctness of the trial court's refusal to grant the injunction.

"It is the earnest contention of appellant that the trial court erred, and its contentions in support thereof will be developed under the following propositions in which, for convenience, the Act above mentioned is referred to as the 'Enabling Act.'"

Under the facts shown, the correctness of the learned trial court's action in so refusing to grant the temporary injunction sought depends upon whether or not the statute thus invoked is constitutional; in the determination of that question, the first objection presented to its validity—that it contravenes section 56 of article 3 of the Constitution of Texas, specifically providing that "the Legislature shall not * * * pass any local or special law * * * regulating labor, trade, mining and manufacturing"— appears to us to be well taken, as does also the subsidiary one that no advance local notice of intention to apply to the Legislature therefor was given, as is required by succeeding section 57 of the same article.

Both by its caption and by section 3 of the act (Vernon's Ann. Civ. St. art. 165—1, § 3), its application is expressly and specifically limited to counties having a population in excess of 350,000, according to the last preceding federal census, and, as above quoted, its concluding clause limits its life to a period of two years from and after its passage on March 6, 1934; the last federal census was taken in 1930 and Harris county was the only county in the state having that required population at the time of the passage of this statute, hence it is self-evident that it is the only such county that ever can have during the brief lifetime of this law that many people according to the census already so held; the federal census has only been taken decennially from and after the year 1890 (U. S. Civil Statutes, title 13, c. 4, §§ 201, 202 [13 USCA §§ 201, 202]), wherefore it is alike obvious that—according to that invariable practice by the federal government of forty years' duration—there will not be another one taken during such limitation of life prescribed for this act; by well-settled rules of law the Legislature, when it came to act upon this matter, was charged with knowledge of these facts particularly: (1) That Harris county was the only county in the state then having the required population, or that could acquire it according to existing law and this unbroken procedure of the federal government in the matter of taking only decennially the general population census among the various states;

(2) that in consequence Harris county alone would necessarily enjoy or endure the provisions of this law for the time it was so expressly enacted to last, unless these federal laws and practices were changed; it is true the act does not expressly restrict its provisions to Harris county, on the contrary these are general, permitting any county in the state of that required population to come under its operation, but, in view of the facts referred to, which the Legislature was required to take notice of in thus legislating, that is neither conclusive nor controlling, because, as said by the Supreme Court in City of Fort Worth v. Bobbitt, 36 S.W.(2d) 470, 472:

"Of course we do not mean to hold that an act general in its nature and terms would be in contravention of the above constitutional provisions, merely because at the time of its passage it only affects one city; in fact we hold to the contrary. We think, however, that an act which is so drawn that by its plain and explicit provisions it is made to apply to one city only in the state, and can never in any contingency apply to any other city, is just as repugnant to the constitutional provisions under discussion as though the name of the city to which the act does apply had been written into the act in the first instance. In other words, we think that a city can be designated by description just as effectively as it can be named"; of like import are Womack v. Carson (Tex. Com. App.) 65 S.W.(2d) 485; Smith v. State, 120 Tex. Cr. R. 431, 49 S.W.(2d) 739; Fritter v. West (Tex. Civ. App.) 65 S.W.(2d) 414; Bexar County v. Tynan (Tex. Civ. App.) 69 S.W.(2d) 193.

But appellant earnestly and ably urges in answer to these considerations, after citing subdivision 8, art. 23, R. S. of Texas, to the effect that the words "preceding federal census" shall be construed to mean "each such subsequent census as it occurs":

"Although Harris County is the only county in the State at this time affected by the provisions of the Enabling Act there is an entire possibility, if not probability, of one or two of the larger counties in the state attaining the population of 350,000 under the next census. A census may be taken at any time under the holding of the Legal Tender Cases, 12 Wall. 536, 20 L. Ed. 287.

"Under the Constitution of the United States a census may be taken in such manner as Congress directs. (Constitution of the United States, Article 1, Section 2). * * *

"Appellant feels that this Honorable Court is justified in taking judicial cognizance of the practicable necessity for the tak-

ing of a census in connection with the programs of the present National Administration, and if this is done, it is obvious that other counties may enter the classification set out in the Enabling Act. In view of this possibility, no matter how remote, the Enabling Act is not a local or special law under the holding of the cases above cited and discussed."

Obviously this tribunal may not (under the accepted canons of judicial presumptions, 17 Tex. Jur. 111, pars. 55–77, inclusive) properly presume as facts, first, not only that there is such a "practicable necessity" for taking a general federal census of the population throughout the forty-eight states of the Union prior to March 6, 1936, but also, second, that the Congress, which is not even now in session nor will be till January, 1935, will repeal all the existing statutes on that subject and provide for a new census that can be completed before that date; especially is that plain, since we must take judicial cognizance of the fact—presumably known to every intelligent citizen in the United States—that there is now imminently impending a general election throughout our whole country, in which the entire membership of the House of Representatives of that body, together with one-third of that of the Senate, are to be rechosen; should the result of that election be unfavorable to "the present National Administration," even to the extent of withdrawing control from it of either branch of Congress, its "programs" would probably not be enacted—lamentable as both results might seem to be.

■■ Although the burden was on it to produce proof both of the probability and practicability of such an effective change in the federal law, the sole fact or circumstance cited by the appellant as a possible basis for such presumptions is that a bill was recently introduced in the Senate of the United States (known as H. R. 9391) looking to the taking of a census as of November 12, 1934, merely "of unemployment, employment, and occupations in the United States and its territories"; but aside from the fact that it could have been of no value in determining the total population of any county as of that date, even it failed of passage in the Senate as then constituted. Thus, without any factual basis whatever for and with the pull of both this long-established federal law and precedent—as well as every reasonable probability aliunde—against it, this court is in effect further asked—in order to uphold the measure notwithstanding this positive constitutional inhibition in Texas—to now presume, as a matter of law, that the United States Congress will repeal its existing statutes on that subject and provide for the taking and practicable completion of such another general population census throughout the several states as may possibly permit some one or more other counties in Texas than Harris to muster a population in excess of 350,000 before this act would otherwise die a natural death on March 6, 1936; presumptions of law, however, by all the authorities, are not to be based upon such airy nothings, requiring rather at least some solid foundation of established fact upon which to rest; 22 Corpus Juris, par. 61, and footnotes 50–52, inclusive, with cited authorities; 17 Tex. Jur. 111, pars. 55, 56. Certainly, the potential authority resting in Congress to so change the law is no earnest that it will be exercised, especially in such an unprecedented if not precipitate way, nor if so that it can reasonably be completed in time, the implications being to the contrary, to the extent that the time is far shorter than such work has ever before been done in, and the state of the law once shown to exist is generally presumed to continue. 17 Tex. Jur., p. 300, par. 85, and cited cases; Zarate v. Villareal (Tex. Civ. App.) 155 S. W. 328.

Learned counsel for appellant have neither adduced any authorities expressly holding that the courts of a state will in any circumstances—let alone such as obtain here—presume as a matter of law that the Congress will change the long-standing statutes touching the taking of the census or any other governmental policy, within a time extraneous to those statutes but named by such courts themselves; nor is any such implication properly inferable from the cases they do cite, of which, in their quoted statement, supra, they say: "This 'Enabling Act' is not a local or special law under the holding in the cases above cited and discussed." In all of these, of which Clark v. Finley, 93 Tex. 171, 54 S. W. 343, is typical, the courts were construing statutes relating to persons or things as a class rather than to particular ones of a class, under facts then actually existing or from the evidence presented presumably capable of thereafter coming into being during the allotted life of the law—not one like this, where, without any such facts or proof, well-nigh immediate future changes in long-prevalent federal law must be presumed to save it from always being in a class by itself; since in our opinion no such presumption may be properly indulged, it follows that this act is so drawn that by its plain and explicit

provisions it is made to apply to Harris county alone, hence falls clearly under the holding applied in the Womack, Bobbitt, and Tynan Cases, cited supra, and is therefore invalid.

Pursuant to these conclusions, the judgment has been affirmed.

Affirmed.