## Prudential Ins. Co. of America v. Gaines.

(Decided Jan. 14, 1938.)

R. W. KEENON and B. L. KESSINGER, and LOUIS L. WALKER for appellant.

ROBINSON & KAUFFMAN for appellee.

Opinion of the Court by Judge Perry—Reversing.

The appellant company issued on January 6, 1923, to Edward C. Gaines, of Lancaster, Garrard county, Ky., a policy of life insurance that was in full force at the time of his death on January 30, 1936.

By the terms of this policy, the company insured the life of Edward C. Gaines, subject to the provisions of the policy, and thereby agreed to pay to his wife, Maybel C. Gaines, named therein as beneficiary, the sum of $3,000, upon receipt of due proof of his death in any event, during the continuance of the policy.

In addition to the life insurance thus provided under the regular policy, there was a rider attached thereto and made a part thereof, whereby the company further provided for the payment of an accidental death benefit to the beneficiary named in the policy "upon receipt of due proof that the death of the insured occurred during the continuance of said policy * * * as a result, directly and independently of all other causes, of bodily injuries, effected solely through external, violent and accidental means, provided, However that, no accidental death benefit shall be payable if the death of the insured resulted * * * directly or indirectly from bodily or mental infirmity or disease in any form."

It is disclosed by the record, and uncontradicted, that the insured, Edward C. Gaines, on the morning of January 25, 1936, while walking from his home to the Public Square or business section of Lancaster, slipped and heavily fell upon a sleety, ice covered platform upon which he at the time was going to the store of the Elliott Hardware Company. Insured was by the fall so severely injured that he lay unconscious where he fell until regaining consciousness, and, finding himself hurt and unable to walk, he called for assistance to help him get up. Sam Elliott and others in the store, hear-

ing his call, went to his aid and with much difficulty got him up and carried him first into the Elliott store and from there to his home. Dr. Caywood was at once called there to administer to his injury and suffering and soon arrived at his home within about a half an hour after the insured's fall, when he at once made an examination of his condition and injury after which he had him carried to his office where a further examination was made of him to ascertain the extent of his injuries; and also directed an X-ray picture there made of his injury, which showed that he had received a broken shoulder as the result of his fall.

Dr. Caywood states that he had never previous to this occasion been the insured's physician, nor had ever made, nor had opportunity to make, a previous examination of the insured to ascertain his condition or state of health, and did not know what it had been. Dr. Caywood was, however, his only attending physician during the brief period of his injury and suffering following his fall and ending with his death on January 30, 1936.

A death certificate was thereupon filled out by Dr. Caywood, as insured's attending physician, wherein he set out the fact of the insured's death, its date, and also the direct and contributing cause thereof.

A certified copy of the death certificate was sent the appellant, which was received by it as due proof of the insured's death, when the appellee was, as the beneficiary named in the policy, paid the sum of $3,000, the amount called for by the terms of the said policy to be paid her in the event of the death of the insured from whatever cause.

The company, however, refused to pay the double indemnity or additional, accidental death benefit of $3,000, claimed by appellee as due and owing her under the provisions of the rider attached to the policy, as set out supra, upon the ground that the insured's death was, by the proof thereof it had received, shown not to have been the "result, directly and independently of all other causes, of bodily injuries, effected solely through external, violent and accidental means."

The appellee a few months later, because of the appellant's refusal to pay her this accidental death benefit insurance, provided for by the rider to the policy, brought this action to recover the amount claimed owing

her thereunder, by her petition setting out substantially the facts as hereinabove stated; that the policy and rider thereto were issued her husband, the insured, by appellant on January 6, 1923, wherein she was named as his beneficiary; and that while the policy continued and was in full force and effect, the death of the insured, Edward C. Gaines occurred and was caused and brought about by an accidental fall, and resulting bodily injury received on January 25, 1936, which was followed by his death on January 30, 1936. Also, she alleged that his death was the result, "directly and independently of all other causes, of bodily injuries, effected solely through external, violent and accidental means," and that defendant was indebted to her under and by reason of the terms of this rider contract of insurance, the payment of premiums thereunder and the accidental death of the said Edward C. Gaines, in the further sum of $2,999, for which amount she prayed judgment, with interest from January 30, 1936, until paid.

Appellant (defendant below) filed answer and counterclaim, whereby it joined issue by denying all the material allegations of the petition. By a second paragraph it set out a counterclaim for $119, credit owing it for overpayment made by it under mistake as to the age of the insured, induced by error in application. As to this, however, the parties agreed upon allowance of the credit and the same is therefore eliminated as a question for our present consideration.

Such being the one issue joined, plaintiff introduced her proof tending to show that the insured's death was the result of his accidental fall and caused by severe bodily injury received in and resulting from that fall, independently of any other cause.

Dr. Caywood, who attended the insured in his last illness, testified that upon the occasion of Mr. Gaines' fall, in which he received this severe injury, he was called to administer to him at his home, and arrived there about a half hour after the accident occurred; that when he then made an examination of him, he found that Mr. Gaines had suffered an injury to his right shoulder, which was very painful, and that he was also suffering at the time from a heart lesion; further, that he had had an X-ray picture made of his shoulder, injured by the fall, which showed that it was thereby broken. Dr. Caywood further stated that he had never been Mr. Gaines'

physician, had never examined him before this occasion, and that he did not know the previous condition of his heart nor of any other part or organ of his body, but that he could tell from his examination made of him at this time that the condition he then found was not the normal condition of his heart for the reason that had it been, Mr. Gaines could not have so actively attended to his insurance business as he knew he had before his fall. He states he found him suffering a great deal with his shoulder, that it was beginning to swell and was blue, and that the manipulations of it were painful and continued to be so up until his shortly following death on January 30.

He was asked the hypothetical question:

"If this injury described here was the direct and proximate cause of this man's death; this accident, free from any other cause, produced his death?" to which question an objection was made by defendant and overruled, when the witness answered, "Yes sir."

Further, this question was asked him:

"I am going to put the question in another form. I will ask you whether or not in your opinion this man's death was not produced solely and directly by this accident independent of all other causes of bodily affection and condition?"

(Objected to by counsel for defendant. By the Court: "It would be competent to ask from his treatment of Mr. Gaines or his observation, whether Mr. Gaines' death was caused directly from this injury testified to and effected solely by it and independent of all other causes.")

To this question Dr. Caywood answered, "Yes sir, that is true."

Dr. Caywood was the only expert witness who testified for plaintiff and the only one who stated that in his judgment the injury he received as the result of his fall was the direct and sole cause of insured's death.

Such testimony, however, given by him was in direct conflict with and contradictory of the doctor's statements earlier made in the death certificate filled out by him, as to what in his judgment, as the insured's attending physician, was the cause of his death, wherein he

stated that "the principal cause of death and related cause of importance was chronic myocarditis with auricular fibrillation," and that "the contributory cause of importance not related to principal cause was shock due to fracture of humerus. 1—25—36."

Appellee also introduced as witnesses in her behalf a number of the former friends and associates of her husband, the insured, whose testimony was to the effect that even had the insured been sick and treated for a condition of health diagnosed by Dr. Kinnaird as heart trouble in February or March, 1934, it was shown that he had recovered from such former condition by the activity and energy with which he prosecuted his insurance business, driving alone in his car all over Garrard and adjoining counties to solicit business, and the energy and enthusiasm with which he played croquet with his friends; also, that these and other activities showed him to be, in their judgment, not suffering from any diseased or disabled condition, as was also indicated by his appearance.

The appellant introduced in support of its contentions the expert witnesses, Drs. Kinnaird and Bradley.

Dr. Kinnaird testified that along about March or April, 1934, he was called upon to treat Mr. Gaines, the insured, for a very serious condition of illness he then suffered; that he at that time examined him and diagnosed his symptoms as "coronary thrombosis followed by myocarditis," and that in treating him for this illness, he put him to bed for a month's rest; that he found his condition at that time such that he did not think he would ever be able to resume his insurance work or do anything but light office work, and that, because of such condition, he made out a written application for the insured to the appellant for total and permanent disability. Further, he testified that, in his judgment as an expert, the accidental fall of a man, resulting in a simple fracture of his shoulder, would not alone be sufficient to cause his death, nor would such an accidental fall or injury therefrom be sufficient to produce, within the short period of a half an hour, the heart condition of chronic myocarditis with auricular fibrillation, as found by Dr. Caywood, upon his examination of the insured.

Dr. Bradley's testimony, given in answer to hypo-

thetical questions submitted on the data given of the case by Dr. Kinnaird, found upon his earlier examination made of the insured, corroborated Dr. Kinnaird's testimony and was to the effect that the heart condition of myocarditis, found by Dr. Caywood upon his examination of the insured just after receiving his fall, was but the continued condition earlier found and reported by Dr. Kinnaird upon his examination made of him more than a year previously and then by him diagnosed as myocarditis. He also testified, in answer to a further hypothetical question asked him, that a fall, such as insured had on January 25, 1936, resulting in the simple fracture of his shoulder, would not have been sufficient to have solely or in itself caused the death of the insured.

Without attempting to go into the evidence in detail, presenting the clashing views given in the conflicting testimony of these medical experts as to whether or not the fall of the insured and the injuries resulting therefrom were alone and in themselves sufficient to have caused the death of the insured, for which recovery is here sought as for an accidental death, it is enough to say that inasmuch as such was the positive character of a portion of the evidence given for appellee by Dr. Caywood, though conflicting with that of appellant's experts, we do not incline to the view that the defendant was entitled to have a directed verdict given to find for it.

It appears that upon the submission of this case upon this conflicting evidence and under the instructions of the court, the jury found a verdict for plaintiff in the sum asked of $2,881.87, with interest.

While the appellant contends that the court's instructions were erroneous under which the jury was here permitted to find for the plaintiff as for accidental death and that the court erred in not giving the certain instructions A and B offered by it, we do not find this contention meritorious, in that we approve the instructions as given, wherein what we conceive to be the law of the case was clearly submitted to the jury.

However, in connection with the objection of appellant to the judgment, we are led to conclude, in view of the contradictory condition in which we find the evidence given for appellee by her only expert witness, Dr.

Caywood (upon which, therefore, her right to recover in this action must rest), that the verdict of the jury based thereon must be held to be flagrantly against the evidence.

More directly speaking as to this point, the question is, Was the testimony of appellee's one expert witness, upon which the verdict for appellee must needs rest, sufficient to sustain it? His testimony given upon the trial was to the effect that insured's death was caused by his accidental fall, as was also the heart condition of myocarditis found upon his examination of the insured within thirty minutes thereafter. Against this testimony, however, there is not only the answering contradictory testimony of the experts testifying for appellant, but, also, this testimony of Dr. Caywood is contradicted and nullified by his own previous statements made in the death certificate, prepared and signed by him for appellee, wherein he recited that the principal cause of the death of the insured was "chronic myocarditis with auricular fibrillation," and that the contributory cause thereof was "shock due to fracture of humerus."

In this condition of the evidence, as it is shown by the record, it results that appellee is without any effective expert evidence in support of her claim that her husband's death was caused solely by his fall and the resulting injuries therefrom, in that neither of these statements of Dr. Caywood can be taken as true until some explanation removes the contradiction existing between these two conflicting opinions as to the cause of insured's death.

The result of this situation is that we find ourselves constrained to hold that the judgment here awarded in favor of plaintiff must be held to be flagrantly against the evidence, where the evidence upon the only material issue presented in this case (as to whether or not the death of the insured, for which this double indemnity insurance is sought, was solely and directly caused by the injuries resulting from his accidental fall) is so contradictory and conflicting.

We take it that the following rule is well established in a case like this, where double indemnity is provided for by the terms of a policy similar to those here found:

"It (insurance company) is not liable [under such

special provisions] where the injury or death [of the insured] happened in consequence of the disease or bodily infirmity, [of the insured] and not of the accident, or where it is due both to the accident and the disease. But where the accident, and not the diseased condition, [of insured] is the proximate cause of the death, the company is liable."

Fidelity & Casualty Company v. Cooper, 137 Ky. 544, 126 S. W. 111, 113. Also, in Provident Life & Accident Ins. Co. v. Watkins, 256 Ky. 645, 76 S. W. (2d) 880, there is cited with approval the case of Bohaker v. Travelers' Insurance Company, 215 Mass. 32, 102 N. E. 342, 46 L. R. A., N. S., 543, wherein the theory upon which recovery in such case is based, as well as the limitation thereon, is thus stated:

"A sick man may be the subject of an accident, which but for his sickness would not have befallen him. One may meet his death by falling into imminent danger in a faint or in an attack of epilepsy. But such an event commonly has been held to be the result of accident rather than of disease."

In Manufacturers' Accident Indemnity Company v. Dorgan, 58 F. 945, at page 954, 7 C. C. A. 581, at page 590, 22 L. R. A. 620, it was said by Taft, J.:

"If the deceased suffered death by drowning, no matter what was the cause of his falling into the water, whether disease or slipping, the drowning in such case would be the proximate and sole cause of the disability or death, unless it appeared that death would have been the result, even had there been no water at hand to fall into. The disease would be but the condition; the drowning would be the moving, sole, and proximate cause."

We are, therefore, of the opinion that the judgment here awarding recovery to the appellee must be reversed, upon the ground that the same is flagrantly against the evidence, in that it is not supported by any sufficient evidence, as Dr. Caywood's contradictory testimony now stands unexplained and inharmonious.

Judgment reversed, cause remanded for a new trial, and proceedings consistent with this opinion.