## Prudential Ins. Co. Of America v. Lowe.

May 26, 1950.

Burrel H. Farnsley, Judge.

Wm. Marshall Bullitt, R. Lee Blackwell and Bullitt, Dawson & Tarrant for appellant.

Finley Gibson Jr. and H. E. Rose for appellee.

STANLEY, COMMISSIONER—Reversing.

The action is to recover $2,000 under the provision of a double idemnity insurance policy for death of Parker H. Lowe through accidental means as therein limited and defined. A similar sum payable on the death of the insured without regard to the cause was paid without question. The contract to pay this accident insurance is if death "occurred as a result, directly and independently of all other causes, of bodily injuries

effected solely through external, violent and accidental means;'' within ninety days thereafter; and further, that the injuries must be evidenced by ''internal injuries revealed by an autopsy.'' One of the conditions and exceptions in this provision is that no such benefit ''shall be payable if such death results * * * directly or indirectly from bodily or mental infirmity or disease in any form, or medical or surgical treatment therefor.''

The first instruction directed the jury to find for the plaintiff if they believed the primary condition of payment existed as above outlined. The second instruction directed the jury to find for the defendant if they believed from the evidence that the insured, ''came to his death from any other cause not proximately brought about by personal injuries received from purely accidental causes, or if you believe from the evidence that any other cause coupled or joined with accidental personal injuries received caused his death, and that the accidental personal injury, if any, received by him was not the sole cause of his death, independently of all other causes.''

No criticism of these instructions is made. They are recited as a succinct and proper statement of the law by which this court too must be guided. It is the contention of the appellant that under either or both conditions the facts entitled it to a peremptory instruction. It is submitted as being indispensable to a recovery that the beneficiary, who is the widow of the insured, must have proved not only an accidental injury but that such injury was the *sole* cause of death, ''independently of all other causes;'' that it was not sufficient to prove that death could or might have resulted from the accident or from cooperative effects of such injury and a pre-existing cancer and intestinal adhesions.

The insured was employed as a fireman's helper at a distillery. He was 42 years old, apparently strong and in good physical condition. On the day he experienced an accident, he had already worked one shift of eight hours and, as he had often done before, volunteered to work a second successive shift. Coal was being emptied through the hopper of a railroad car into an opening leading to the furnace room. In some way Lowe was caught in the falling coal and carried partly through the opening. He was pinned in an inclining position

with coal up and around his hips. It was nut coal with some slack. An effort was made to pull him out by his shoulders, but it could not be done. After the coal had been dug from around him to about his knees, he pulled himself out, and went on with his work without intermission until the end of the shift, five or six hours later. He rejected the suggestion that he go for first aid, insisting that he was not hurt. His only complaint was that his knees and ankles were a little stiff, but he thought they would be all right as soon as the circulation was restored. He continued at work four days afterward.

Dr. Paul Osborne was called to attend him for acute pain in the abdomen, which he thought was some gall bladder involvement. Two days later he sent Lowe to a hospital for examination by Dr. Walter Hume, who, Dr. Osborne learned, had once performed an operation on Lowe. At no time did Lowe mention the accident to Dr. Osborne. We summarize the essential testimony of Dr. Hume. He had operated on the insured thirty years before when he was about twelve years old for a ruptured appendix. When he saw Lowe on May 1, 1945, he gave as a part of his history that he was hurt in a coal slide a week before. The patient had all the signs of an intestinal obstruction, and an operation was performed upon him without delay. The surgeons found he had "dense adhesions" in the right side of the abdomen with recent inflammation. A separation of the adhesions revealed a torn intestine and peritonitis. This was repaired. Dr. Hume defined adhesions to be, as a rule, "scarings due to an old injury, or inflammation" due to parts of the body growing together. The operation was successful from the standpoint of affording relief, but the incision did not heal, and the patient complained of pain in his lower left side. A second operation revealed "numerous small masses" in the lower left abdomen, which proved to be a type of cancer. In short, Dr. Hume's opinion was that the adhesions with the accompanying infection in the intestine were the result of the ruptured appendix of thirty years before, and that the accident in which his patient had been recently involved, with the pulling of his body to effect his release from the coal, may have caused a tear and precipitated or aggravated the condition which required the first operation. However, it did not cause the cancer, though the injuries could have encouraged its spread.

Dr. Hume testified that he and Dr. Neblett, who had assisted in the operation, Dr. Allen, who performed an autopsy, and Dr. Marshall, whose connection with the case was not stated, after considering the influence of the injury, had certified that Lowe's death was due to "cancer of the intestines; contributory cause, injury." Elaborating upon this in his testimony, Dr. Hume expressed the opinion that the accidental injury was not otherwise related to the cancer, which was the cause of the man's death; that it was incurable, and while the scattered growths or masses were small and probably were in a fairly early stage, the man was so "weak and out of sorts that he couldn't stand anything well, so for him it meant a late stage of the disease." More specifically, Dr. Hume was of the opinion that the insured "would not have died of the cancer on that date if he had not had the previous trouble of obstructions, from whatever cause, operations and all," but later.

The testimony of Dr. Lamar W. Neblett was substantially the same as that of Dr. Hume. He testified that the insured died of cancer. He had to assume, as he stated, that his injury, or the experiences in the accident, was an exciting or contributing cause in that it had caused the break of the adhesions and the obstruction in his intestines. But the doctor declined to express an opinion as to whether this had hastened the man's death from cancer. Dr. John D. Allen described the conditions he had found in the body upon making an autopsy. Being asked to state that condition in a layman's language, he did so this way: "We found a schirrous adenocarcinoma of the small intestine with metastasis to parietal peritoneum and serosa of the greater part of the intestinal tract. Adenocarcinoma is a type of cancer. We also found multiple obstructions of the small intestine due to tumor infiltrations and adhesions. There was a double enterostomy opening near the midline with a healed rectus incision on either side." This simple language was for the benefit of the laymen. We give our understanding in big words for the benefit of the doctors. There were obstructions in and an extensive cancer of the bowel. The condition had existed for some time before the accident, "probably several years old," was beyond the operative stage and would have ultimately caused death. The doctor stated the intestinal obstruction could not be "accounted for in its entirety by the

cancerous growth, but as the result of the recent adhesions, which were apparently the result of peritonitis. It is my opinion that insofar as a cancer was concerned, that the patient might have had a survival period of weeks or probably months.''

It seems to us, that all this evidence shows, or only tends to show, is that the death of the insured was not embraced within the terms of liability under the policy. At most, it shows the accident caused the acceleration of death, but even that was because it had separated the long existing adhesions and thus weakened the man's condition and caused an earlier fatal development of the disease of cancer. It cannot be said with any degree of fairness to the insurance company that having become embedded to his hips in the coal and the exertion to extract himself, caused the man's death, ''directly and independently of all other causes'' or that his death was ''effected solely through external, violent and accidental means.'' On the contrary, all the evidence, with none to the contrary, brings the case within the negative provision of the policy, namely, that the insured's death resulted from disease. The case comes well within Standard Accident Ins. Co. v. Strunk, 220 Ky. 256, 294 S. W. 1085; National Life & Accident Ins. Co. v. Kendall, 248 Ky. 768, 59 S. W. 2d 1009; Prudential Insurance Co. v. Gaines, 271 Ky. 496, 112 S. W. 2d 666, in each of which the judgment was reversed because flagrantly against the evidence though there was a bit of opinion evidence regarded as sufficient to take the case to the jury under our then incongruous rule, since abandoned. Even regarding the evidence as showing cooperative effect of the accident, or death from both accidental injuries and disease, it is not sufficient, for the terms of the contract were that accidental injuries must have been the sole cause, which is regarded as the proximate cause. Fidelity & Casualty Co. v. Cooper, 137 Ky. 544, 126 S. W. 111; Aetna Life Insurance Co. v. Bethel, 140 Ky. 609, 131 S. W. 523; Salinger v. Fidelity & Casualty Co., 178 Ky. 369, 198 S. W. 1163, L. R. A. 1918C, 101; Standard Accident Insurance Co. v. Strunk, 220 Ky. 256, 294 S. W. 1085.

We are of opinion, therefore, that it was error not to have sustained the defendant's motion for a peremptory instruction.

The judgment is accordingly reversed.