## Commonwealth Life Insurance Company v. Thornton.

(Decided May 10, 1918.)

### Appeal from Bullitt Circuit Court.

1. Insurance—Application—Question for Jury—Question and Answer as to Health.—In a suit on an insurance policy, evidence examined and held that it was a question for the jury whether the applicant's negative answers to the questions, "Have you had asthma, hay fever, consumption, spitting of blood, habitual cough? Any expectoration, palpitation, or any disease of the throat, heart or lungs?" were substantially untrue.

2. Insurance—Life Insurance—False Representations—Waiver—Evidence—Admissibility—Error.—Where in a suit on a life insurance policy defended on the ground that the insured falsely represented in his application that he had not had tuberculosis, plaintiff pleaded a waiver based on the allegation that the defendant with knowledge of the fact that he had had such disease and of the falsity of his answers, issued the policy and collected the premium, evidence that it was the usual custom of life insurance companies generally to have a correspondent in each locality to whom they referred for confidential information in regard to the applicant or the applicant's condition, and that it was customary not to issue the policy until they received a report from their confidential adviser, if they had one in that locality, was not admissible to support the plea of waiver; and such evidence having been commented on by counsel for plaintiff and being of a character calculated to induce a verdict on grounds other than those authorized by the instructions, its admission was prejudicial error.

KELLY & KELLY, R. C. CHERRY and BURNETT, BATSON & CARY for appellant.

C. P. BRADBURY for appellee.

OPINION OF THE COURT BY WILLIAM ROGERS CLAY, COMMISSIONER—Reversing.

The Commonwealth Life Insurance Company insured the life of John Willie Thornton in favor of his wife, Ida May Thornton, for $1,000.00. Upon the death of her husband, the company denied liability and Mrs. Thornton brought this suit to recover on the policy.

In the application and medical examination signed by the insured, he was asked the following questions: Q. Are you now in good health? Q. Have you always enjoyed usual good health? Q. Have you had asthma, hay fever, consumption, spitting of blood, habitual cough? Any expectoration, palpitation, or any disease of the throat, heart or lungs? To the first two questions the insured answered "yes." To the last two questions he answered "no." The company defended on the ground that these answers were false and material and therefore voided the policy. By appropriate instructions the issues were submitted to the jury.

The company first contends that a verdict should have been directed in its favor because the evidence conclusively showed that the insured had had tuberculosis. A decision of this question makes it necessary to give a brief summary of the evidence. The insured, who was 28 years of age, was a merchant residing and engaged in business at Lotus in Bullitt county. His application was secured on January 23, 1916. He was examined on January 27, 1916, and the policy was issued and delivered on February 5, 1916. For the company Dr. Dodds testified that the insured called at his office about March 7, 1916, and appeared to be suffering from an attack of lagrippe. He had a deep cough which he stated he had caught while driving his delivery wagon in the rain. When the cough did not yield to treatment, witness became suspicious and upon examination of the insured found a little roughness of the lungs. Thereafter the sputum of the insured was sent to Dr. South at Bowling Green for analysis. A postcard was received showing that the test disclosed the presence of tubercular germs in the sputum. Witness then concluded that the insured was suffering from tuberculosis. Dr. Bates testified that about four or five years prior to the giving of his testimony, the insured came to him and reported that he had been spitting blood. On examination he found him

suffering from hemorrhage of the lungs, which in his opinion was due to a tubercular condition and so advised the insured. The insured continued to call once or twice a week for a period of about two months. He then discharged him on account of his apparent recovery. He called to see the insured the day he died and found him suffering with edema of the lungs. Dr. Tuley testified as to the materiality of the questions. On the other hand Mrs. Thornton testified that she had known the insured for four or five years. During that time he was a strong, robust man, and had never spit blood to her knowledge. She further testified that the insured was never ill until he caught cold in the rain and developed the illness from which he died. Other witnesses who were acquainted with the insured, testified that they had never seen him spit blood, and that his appearance was that of a healthy man. Dr. McClure, the company's medical examiner, testified that he examined the insured with a stethoscope. He found no lung trouble of any kind and classified the insured as a good risk. In his opinion tuberculosis was not present. Dr. Dodds was recalled and testified that two or three years before he gave his testimony, he examined the insured for insurance in the Woodmen of the World, and passed him as being practically a sound man. There was further testimony to the effect that if the insured was suffering from tuberculosis at the time of his death, it was acute tuberculosis. The point is made that as the examination by the other physicians was made at a different time and the other testimony that the insured was in good health was given by witnesses who were not experts, their testimony was not sufficient to rebut the positive testimony of Dr. Bates that the insured reported to him that he had been spitting blood and that he found on examination that the insured was suffering from tuberculosis. Bearing in mind that Dr. Bates testified that he found the insured suffering from tuberculosis and discharged him in two months on the ground that he had recovered, and that the credibility of a witness is for the jury; and taking into consideration the lasting character of the disease, the testimony of non-expert witnesses that he was a strong, robust man, and the fact that the two physicians who subsequently examined him, found him free from tuberculosis, we conclude that there was a sufficient conflict in the evidence to make it a question for the jury whether the answers

of the insured were substantially untrue.    Brotherhood of Railroad Trainmen v. Swearingen, 161 Ky. 665, 171 S. W. 455.

During the examination of Dr. Bates, he was permitted to testify over the objection of plaintiff that it was the usual custom of insurance companies to have a correspondent in each locality to whom they referred for confidential information in regard to the applicant or the applicant's condition, and that it was customary not to issue the policy until they received a report from their confidential adviser, if they had one in that locality. It further appears that counsel for plaintiff in his argument to the jury commented on the fact that the company was not satisfied with the report made by the examining physician, but had a secret confidential man. This evidence was introduced by plaintiff in support of her plea of estoppel based on the allegation that if the insured had or had had tuberculosis at the time the application was signed, the company had received a confidential report of this fact, and with knowledge of his condition and of the falsity of his answers, had issued the policy and collected the premium.    Such defense might have proved available if supported by competent evidence.    Reserve Loan Life Ins. Co. v. Boreing, 157 Ky. 730, 163 S. W. 1085; Manhattan Life Assn. of Western New York v. Robinson, 149 Ky. 80, 147 S. W. 882, but the evidence complained of was insufficient to show such knowledge on the part of the company.    A case might arise where the performance of an act by a particular agent might be inferred from the fact that the principal had such an agent and that it was usual and customary for such agent to perform such act in the regular course of his employment, but in the present case it is not shown either that the defendant company had a confidential adviser in the locality where the policy was written, or that it was customary for the company not to issue a policy until a report of the applicant's condition was received from him.    The sole testimony on the question is that it was the prevailing custom among life insurance companies generally to have such a representative, and if they had one, not to issue the policy until a confidential report was received from him.    Under these circumstances we conclude that mere proof of the custom among life insurance companies generally, was not admissible for the purpose of showing that the de-

fendant company had a confidential representative in the locality where the policy was written, and that a report showing that the insured had or had had tuberculosis was actually received from him before the policy was issued. We further conclude that its admission was prejudicial in view of the fact that the case is a close one and the evidence was not only commented on by counsel for plaintiff, but was of a character calculated to induce a verdict on grounds other than those authorized by the instructions.

Other errors are relied on, but as they will probably not occur on another trial, we deem it unnecessary to consider them.

Judgment reversed and cause remanded for a new trial consistent with this opinion.