## Grand Lodge, Brotherhood of Railroad Trainmen, v. Johnson.

(Decided Marcch 22, 1929.)

BURNAM & GREENLEAF for appellant.

RIDDELL & SHUMATE and H. E. HAY for appellee.

Opinion of the Court by Judge Rees—Affirming.

Appellee, Mary Johnson, recovered a judgment in the Estill circuit court for $1,975 against the Grand Lodge, Brotherhood of Railroad Trainmen, on a policy of insurance carried by appellant on the life of appellee's deceased husband. The policy is in the usual form of fraternal policies with the ordinary written application attached.

The deceased, Dillard Johnson, was a railroad brakeman, and on March 8, 1926, applied for membership insurance in the Brotherhood of Railroad Trainmen. The application was approved May 1, 1926, at which time Johnson signed a supplemental application, and a certificate of insurance was issued to him on June 11, 1926. In August, 1926, Johnson became ill, and the attending physician told him that he had typhoid fever. Later the physician concluded that his diagnosis was incorrect and concluded that Johnson really had tuberculosis. His condition continued to grow worse, and on February 15, 1927, he went through a clinic which is operated by a number of physicians in Lexington, Ky. Upon the advice of the physicians who examined him, he applied for admission, and on February 26, 1927, was admitted, as a patient in the United States Veterans' Hospital at Dawson Springs, Ky. On June 6, 1927, he left the hospital and went to his home in Estill county, Ky., where he was treated by Dr. C. Marcum, a local physician, until his death on June 27, 1927.

When the application was signed Johnson was asked the following questions: ''Have you ever been afflicted with any of the following complaints or diseases?'' Numerous complaints and diseases are set out, including consumption, habitual coughing or expectoration, and syphilis. Johnson answered, ''No.'' Appellant denied liability on the ground that before Johnson signed the

application and the supplemental application he had been afflicted with consumption, habitual coughing, and syphilis, and that his statement that he had not been afflicted with these diseases was false and material and avoided the policy. In its answer appellant averred that certain representations made by the deceased in the application were false; that they were believed and relied upon by the appellant; that they were material to the risk; and that the certificate of insurance would not have been issued if appellant had known of the falsity of any one of them.

The trial court in its instructions to the jury assumed that the statements were material, so the only question to be determined on this appeal is whether or not they were false.

Appellant introduced a number of physicians who treated deceased, by whom it attempted to prove that he had been afflicted with tuberculosis and syphilis before the application was signed. Dr. C. Marcum of Irvine testified that he first treated the deceased in August, 1926; that he treated him for typhoid fever for quite a while, but finally came to the conclusion that he had tuberculosis; that he again treated him after his return from Dawson Springs in June, 1927; and that the cause of his death was tuberculosis of the lungs. Upon cross-examination the witness stated that he had known the deceased since childhood, and that he had always appeared to be a man in good health until August, 1926. He was asked whether or not in his opinion the deceased had tuberculosis either in March or on June 11, 1926, basing his opinion upon the appearance of the deceased in August, and the witness answered: "Well now, the question of whether he had it or when it started, there is no human being under the sun can tell that."

Dr. H. E. Whitledge, a medical officer in charge of the United States Veterans' Hospital at Dawson Springs, testified that Johnson was admitted to the hospital on February 26, 1927, and that he was then suffering from an advanced case of tuberculosis. He was asked if he could give an estimate of the length of time during which Johnson had been afflicted with tuberculosis, and he answered: "With no degree of accuracy. Tuberculosis is a disease that behaves differently in almost every case. All lobes of both lungs being involved, would indicate that he had had the disease at least several months." He also testified that a blood test was made, known as the

Wasserman test, to determine whether or not Johnson was afflicted with syphilis, and that the test showed negative.

Dr. Donehoo who was Johnson's attending physician while he was at Dawson Springs, testified that, judging from the condition he found Johnson in at the time he was admitted to the hospital, it was likely, that he had had tuberculosis as early as March 1, 1926. He also testified that a Wasserman test was made which showed negative. Dr. Charles N. Kavanaugh of Lexington, Ky., member of the Lexington clinic, examined Johnson in February, 1927. He testified that he found him suffering from tuberculosis, and that Johnson was complaining of a cough and loss of weight, and, in giving a history of his case, said that he had been ill about 2½ years and that about 2½ years before the date of the examination by Dr. Kavanaugh he had a severe cough, night sweats, and headache, and was put to bed because of a pain in his chest. When Dr. Kavanaugh was examined further in regard to the date named by the deceased when the latter was taken ill and put to bed, the witness fixed it as August, 1926. Johnson's weight when he was examined in February, 1927, was 142 pounds, and when he signed the application for insurance his weight was 165 pounds, which was approximately normal. Dr. Kavanaugh also testified that Johnson gave a history of syphilis contracted in 1922 and treated in 1925.

Mrs. Mattie Johnson, mother of the insured, testified that he had been well prior to August, 1926, and had not been in bed because of illness during the 2½ years preceding that date. Charley Gumm, a fellow workman, testified that there had been no change in Johnson's physical appearance prior to his illness in August, 1926. As heretofore stated, Dr. Marcum testified that he had known Johnson from childhood and that prior to August, 1926, his appearance was that of a healthy man.

The records of the Louisville & Nashville Railroad Company were introduced, and showed that Johnson performed his duties as brakeman 21 days in March, 1926, 23 days in April, 21 days in May, 24 days in June, 20 days in July, and 16 days in August.

Appellant insists that the testimony of Mattie Johnson and Charley Gumm was incompetent, since neither of them was an expert competent to express an opinion as to the condition of the insured's health, and that there was therefore no evidence to rebut the testimony of Dr.

Kavanaugh that Johnson told him that for 2½ years he had had a severe cough, headache, loss of weight, marked weakness, and night sweats, and that he had contracted syphilis in 1922 for which he had not been treated until 1925. While the evidence as to the condition of the insured's health prior to August, 1926, is slight, it is sufficient to raise an issue for submission to the jury. Dr. Kavanaugh's own testimony is conflicting as to the date of the beginning of the illness as fixed by Johnson. Some of the physicians stated that it was impossible, basing their opinion on his condition when examined by them, to determine when he was first afflicted with tuberculosis. The testimony of Dr. Kavanaugh as to statements made to him by deceased was competent, since these statements were in the nature of declarations against interest. Supreme Tribe of Ben Hur v. Cosgrove, 160 Ky. 595, 161 Ky. 484, 169 S. W. 999; Louisville & Nashville Railroad Co. v. Rowland's Administrator, 215 Ky. 663, 286 S. W. 929; Stiegler v. Eureka Life Insurance Co., 146 Md. 629, 127 A. 397. However, the credibility of a witness is for the jury, and in addition to the conflict in material portions of Dr. Kavanaugh's testimony, there was sufficient evidence to warrant the jury in believing that the witness was mistaken as to statements made to him by the deceased, or that the latter, if he made them, was mistaken.

It is contended that the testimony of nonexpert witnesses as to the physical appearance of the deceased had no probative value and should have been excluded. This contention is not supported by the authorities. In Sovereign Camp, Woodmen of the World v. Morris, 212 Ky. 201, 278 S. W. 554, it was said: "If within his knowledge, a layman may testify as to the strength, vigor and apparent physical condition of another person, and as to the presence or absence in such person of symptoms indicating disease, also some forms of disease are so common and so well understood as to be within the knowledge of a layman, but he cannot diagnose diseases or testify as an expert in reference thereto." Also see Commonwealth Life Insurance Co. v. Thornton, 180 Ky. 472, 202 S. W. 887.

In view of the testimony that the insured was apparently in good health until August, 1926, that his weight was approximately normal when he signed the application, that repeated blood tests failed to show the presence of syphilis, and there being absolutely no evidence tending to show that he had at any time had that disease,

or been treated for it, except the statement attributed to him by Dr. Kavanaugh, we conclude that the truth or falsity of insured's answers to the questions in the application was a question for the jury.

Judgment affirmed.