## Jefferson Standard Life Insurance Company v. Richeimer et al.

(Decided March 13, 1931.)

WAUGH & HOWERTON for appellant.

DYSARD & MILLER for appellees.

OPINION OF THE COURT BY HOBSON, COMMISSIONER——
——Reversing.

On July 26, 1926, the Jefferson Standard Life Insurance Company issued a policy insuring the life of Walter J. Richeimer in the sum of $5,000. He paid the first annual premium, $190.55. The policy contained this provision: "In case of self-destruction, committed whether sane or insane, within two years from the date hereof, the extent of recovery hereunder shall be the premium paid."

On February 6, 1927, Richeimer, who was running a bakery in Ashland in connection with his partner therein, did not come home to supper. His wife called to his partner and asked him to go down and see if he was at the place of business. He and another went down to the store, which had been closed up. They found the water closet locked and on unlocking it found Richeimer in there in a kind of sitting position with his head resting up against the wall. He was shot in the head; the bullet entered from the side, going entirely through the head. The pistol, from which the bullet was fired, was near his right hand and a baker's apron was on the floor. In his coat, which was hanging on the wall of the washroom, was a note addressed to his wife in which he asked her not to think hard of him; that he was about to commit suicide; that he had suffered so long and that it seemed that he was doomed to go blind and if he had another attack of iritis he could not go through it; that he could not bear it any longer. He asked her to take care of the baby and be kind to him and advised her to accept the price that his partner had offered him for his one-half of the business. The paper upon which the note was written looked clean and fresh and it was inclosed in an envelope. The plaintiff proved by several employees at the bakery, and by other people who knew him well, that for several weeks he was not like himself. His mind seemed like it was slipping. He did not seem to know what he was doing. He suffered intensely with iritis. The doctor, who attended him, testified that in the last few months of his life his mind was wandering; he would tell you over and over something. He did not know what he was doing at times and for three or four months he had become mentally unbalanced. The employees of the bakery, who were there with him that evening, said he took no interest in what was going on. He did not seem

to notice anything in particular; for some time they would have to speak to him two or three times to get his attention. He could not fill an order correctly, but would get it wrong. He would grab his head and say the intense pain would drive him crazy; that he was losing his mind. He would frequently lay things down and not be able to find them, not know where he had put them. These witnesses testify that he did not have mind enough to know what he was doing or to know that his act in shooting himself with a pistol would probably kill him.

It is earnestly insisted that the court should have instructed the jury peremptorily to find for the defendant under New York Life Ins. Co. v. Dean, 226 Ky. 597, 11 S. W. (2d) 417. In that case the proof showed that a like suicide note was written at the time of the suicide. In this case the only testimony as to the time when the note was written was as follows:

"Q. Was the note dated? A. I can't swear positive about that.

"Q. What is your best judgment about it? Your best impression. A. I don't know. I don't have any impression on that particular point. I don't remember that I looked to see.

"Q. Didn't you tell us that it was dated the 6th of February? A. Yes, I did.

"Q. Didn't you talk to Mr. Howerton about it last night and tell him that it was dated February 6th. A. Yes, I did, but I got to studying about it after I went home and thought I might have been mistaken.

"Q. Was the envelope in which the note or letter was inclosed a clean envelope? A. It was.

"Q. Was the paper upon which it had been written clean and fresh? A. Yes, sir."

The witness stated that he had delivered the note to the plaintiff, Mrs. Walter Richeimer, who was present at the trial and did not produce it or offer any evidence on the subject. In view of the above testimony the language of the note and the circumstances of the suicide, the court concludes that, in the absence of other evidence on the subject, the presumption is that this note was written at the time of the suicide; that the rule applied in the Dean case applies here; and that the court should

have given the peremptory instruction asked by the defendant. As held in that case, the court erred in awarding the plaintiffs the burden of proof and giving them the concluding argument before the jury.

The other matters discussed by counsel may not occur on another trial. All other questions than those above decided are reserved.

Judgment reversed and cause remanded for a new trial and further proceedings consistent herewith.

Whole court sitting.