## Equitable Life Assur. Soc. of the United States v. Obertate.

(Decided Oct. 12, 1937.)

WM. MARSHALL BULLITT, EUGENE B. COCHRAN and BRUCE & BULLITT for appellant.

R. J. PEAK and J. L. DONALDSON for appellee.

OPINION OF THE COURT BY JUDGE BAIRD—Affirming.

On the 31st day of December, 1931, Neal Obertate made application to the Equitable Life Assurance Society of the United States for a policy of insurance for the sum of $2,500. The application contained a list of questions, which were answered by him. No medical examination was made. The policy was based solely upon the answers to these questions. Due to a mistake made in the December application as to the age of Obertate, on the 20th day of January, 1932, a new application was made correcting the mistake. On or about February 11, 1932, in consideration of a paid premium by Obertate of the sum of $111.08, the Equitable delivered to him the policy sued on. He died on the 16th day of April, 1932. Later, the Equitable, after receiving notice of his death on the 23d day of June, 1932, gave notice of rescission, tendered to the beneficiary, Elizabeth Obertate, the $111.08 premium that had been paid, with accumulated interest, and demanded the surrender of the policy. She refused to accept the tender or consent to the cancellation. This action followed, resulting in her favor of $2,500, with 6 per cent. interest from the 23d day of June, 1932, until paid. The Equitable appeals.

This is the second appeal of this case. The opinion on the first appeal is found in 260 Ky. 374, 85 S. W. (2d) 1004, 1005. On the state of the record based on the evidence at that time we said:

"Since the Equitable is entitled to a reversal because of the court's refusal to instruct the jury as to all of its defenses, and the error in the date from which interest is allowed, it is entirely unnecessary to reproduce the evidence in this opinion. *It is sufficient to say it was, and is, amply sufficient to sustain a verdict for or against either party.*" (Italics ours.)

It therefore follows that, unless the evidence in the instant case is materially different from that in the former case, the opinion in that case is conclusive. We have carefully examined and compared the evidence in each case and find that the witnesses are practically the same and their testimony practically the same, except in the present case appellant offered and the jury heard, in addition, the deposition of Dr. James R. Stites and a certified copy of the death certificate.

Dr. Stites stated that he saw Obertate for the first time on the 25th day of February, 1932, at his office; that the only examination that he made at his office was of his urine and he palpated his prostate gland; that the urine analysis was essentially negative except for an occasional pus cell and blood cell, but chemically it was normal; that the pus cells came from his infected prostate; and that the blood cells came from irritation of the urethra. He made a further examination at St. Anthony's Hospital on the same date; that the examination made at that time is called a cystoscopic study—visualization of his bladder and his urethra and examination of his prostate gland. He stated that the prostate gland was slightly enlarged, but there was no way to tell from the examination of how long standing it was; that Obertate told him that he had been exposed and was apprehensive of contracting a venereal disease; that he examined him for that, but found no trouble; that he treated him several times for the same condition; that he remained in the hospital until he was discharged, but, after treating him fully, he stated that it would be impossible to say definitely what caused his condition; that he could not say that he had heart trouble because he made no examination of that kind. He did say, however, that the cause of his death would have no bearing on his prostate trouble and that it would be the result of coagulation rather than infection; that he gave him an electrical treatment, and often in following that treatment a slough might get loose in the blood

stream that might cause death. He said he could not state that the prostate or that an embolus or blood clot arising therefrom had anything to do with his death. He said that so far as he knew he had no other focus except his prostate. He did say in answer to a hypothetical question that the cause of the attack might have been the result of some heart condition, but he did not positively state that such occurred in this instance. He was asked also a hypothetical question as to what caused him to faint, if he did faint, and his answer was, that he could not tell; that fainting came from a good many causes. It might be an acute gastro-intestinal upset, food poisoning, overeating, and it could also come from some undue nervous strain or excitement. He further stated that it was impossible to say without having seen him what caused any fainting spell that he may have had. He gave as his opinion that the cause of his death was coronary occlusion; that is, a clot into the vessel which supplies the heart with nourishment. He did not take his blood pressure at any time. This, in substance, is a summary of the testimony of Dr. Stites. It was shown by the death certificate that the cause of his death was apoplexy. In our judgment, this testimony would be only cumulative to the testimony considered as sufficient on the former appeal of this case. We do not think it would be conclusive of the issue. The truth or falsity of the evidence was for the jury alone, because on the whole case there was a conflict of testimony as to the issue presented to the jury. We do not think a directed verdict should have been given or that the verdict is flagrantly against the evidence.

It is further claimed that it was highly prejudicial for the court to permit certain lay witnesses to testify as to the physical condition of Obertate prior to and at the time the application was made for the insurance.

Appellee introduced, and the jury heard, Joe Abbott, John Hall, and Howard Supplee, all lay witnesses, who in each instance stated that they knew Obertate for many years up to and immediately prior to his death and knew him to be a strong, healthy man. Abbott said he lived with him four years immediately before his death; that he was living with him in January or February, 1932, the date of the issuance of the policy; that he never knew him to use alcoholic liquor of any kind or to have a heart attack or to be afflicted

with dizziness or convulsions, etc.; that he was a large, strong man, worked all the time; that his general appearance was good; that he did all kinds of work on the farm, cut corn and put up hay; that he never knew him to be sick or in bad health prior to December 31, 1931. John Hall stated in substance that he knew him all the time up to his death; that he associated with him, never knew him to use but little alcoholic liquor, nor to be afflicted with heart attacks, dizziness, etc.; that he worked with him; that he was able-bodied and a strong man; saw him lift large forks of hay in July and August, the summer before his death. Howard Supplee said that he lived close to him, worked with him in threshing wheat, shredding corn, and other work on the farm. He could not definitely fix the time, but he did state in substance that he was a strong man, one of the strongest in the community; that he saw him load into a truck a ten-gallon can of cream two years before his death; never knew him to have a heart attack at any time.

The aforesaid is the substance of the testimony of the lay witnesses. We are unable to see in what respect this testimony is incompetent.

As we said in Prudential Insurance Company of America v. Hodge's Adm'x, 232 Ky. 44, 22 S. W. (2d) 435, 437:

"It has been held that a layman may testify of things within his knowledge as to the strength, vigor, and apparent physical condition of another person, and as to the presence or absence of symptoms indicating disease. It has been held that some diseases are so common and well understood as to be within the knowledge of a layman. The layman may not diagnose disease as an expert, but he may testify to facts within his actual knowledge. Grand Lodge, B. R. T. v. Johnson, 228 Ky. 669, 15 S. W. (2d) 499; Sovereign Camp, Woodmen of the World, v. Morris, 212 Ky. 201, 278 S. W. 554."

As this court on a former appeal said, when the evidence before us was practically the same as on this appeal, that it was amply sufficient to sustain a verdict for or against either party, we are of the opinion that the cumulative evidence of Dr. Stites and the death certificate were not enough to authorize us to now say that a peremptory instruction should have been given

or that the verdict is flagrantly against the evidence especially where there is a conflict of testimony and where reasonable minds might honestly differ as to the truth or falsity of the conclusions or deductions to be drawn from the testimony. Prudential Insurance Company of America v. Hodge's Adm'x, supra.

The court is of the opinion that no error was committed to the prejudice of the rights of appellant. No complaint is made of the instructions.

Judgment affirmed.