## Commonwealth Life Ins. Co. v. Clarke.

Nov. 15, 1938.

E. C. WOOTON and D. G. BOLEYN for appellant.

CLAUDE P. STEPHENS and H. H. SMITH for appellee.

OPINION OF THE COURT BY JUDGE REES—Reversing.

Lucinda Clarke, the beneficiary named in a $1,000 life insurance policy issued on September 30, 1933, by the Commonwealth Life Insurance Company to Shelby Clarke, brought this action to recover on the policy. In her petition she alleged that on May 7, 1934, while the policy was in full force and effect, Shelby C. Clarke was accidentally or intentionally shot and killed by some unknown person and that due proof of such death was filed with the defendant company, but that it had failed and refused to pay to her, as beneficiary under the policy, the sum of $1,000 or any part thereof. In its answer, the defendant denied that Shelby Clarke was intentionally shot and killed by some unknown person, and alleged that he died on May 7, 1934, from gunshot wounds which were inflicted by himself. It pleaded and relied upon the following provisions of the policy as a bar to the plaintiff's right to recover:

"If the Insured within one year from the date hereof die by his own hand or act, whether sane or insane, this policy is null and void and the Company will return only the premiums which have been received thereunder."

It tendered to the plaintiff $45.94, the full amount of the premium paid by the insured. A reply traversed the affirmative averments of the answer, and, upon the trial of the case, the jury returned a verdict for the plaintiff. Appellant insists that the court erred in fixing the burden of proof, in refusing to admit certain evidence, and in overruling appellant's motion for a directed verdict in its favor.

The defense was rested upon the claim that the insured died by his own hand or act, and the court therefore properly ruled that the burden of proof was on the insurer. Jefferson Standard Life Insurance Company v. Richeimer, 238 Ky. 10, 36 S. W. (2d) 652; Inter-Southern Life Insurance Company v. Hinkle's Adm'x, 226 Ky. 724, 11 S. W. (2d) 913; Home Insurance Company of New York v. Johnson, 226 Ky. 594, 11 S. W. (2d) 415; New York Life Insurance Company v. Dean,

226 Ky. 597, 11 S. W. (2d) 417. The deceased was a pharmacist, and was engaged in the drug business in Hindman, Kentucky. About a week before his death, he left his place of business and went to Garrett, Kentucky, where he worked in a restaurant owned by Ed Vanderpool. On the night of May 7, 1934, Clarke, Ed Vanderpool, George Handcox, and Clyde Conley drove in Vanderpool's car to Mollie Draughn's roadside restaurant, which was located five or six miles from Hindman. They went into the restaurant, sat down at a table, and ordered beer. Handcox testified that Clyde Conley had a small caliber pistol which he laid on the table. Shortly thereafter Shelby Clarke's sister, Thelma Clarke, entered the restaurant and she and Shelby began quarreling. Shelby picked up the pistol and walked out of the restaurant followed by Handcox and Conley. Handcox was asked these questions and made these answers:

"Q. Were you up at Mollie Draughn's when he was shot? A. Yes sir.

"Q. Where were you, Mr. Handcox, at that time? A. I was laying on the running board of a car.

"Q. That was on the outside of Mollie Draughn's building? A. Yes sir.

"Q. Where was Shelby Clarke? A. Standing by the well.

"Q. Was he shot there? A. Yes.

"Q. You see him shot? A. Yes.

"Q. Who shot him? A. He shot himself.

"Q. Go ahead and tell about it the best you can? A. As he come out the door he picked up a pistol off of the counter and walked out to the well and he had his head over the well and he was kindly laying over on it and Clyde Conley was standing over on the other side of the well and he went to shooting himself.

"Q. After the last shot was fired, what happened to him? Did he still stand up or fall down? A. We caught him in our arms when he went to fall.

"Q. After that did anybody come out there? A. Yes sir.

"Q. Who was it? A. His sister, Thelma, and

Ed Vanderpool, Mollie Gayheart and Beckham Combs.''

The witness was then asked whether or not Clarke made any statement immediately after the shooting, and he answered in the affirmative. He was asked to repeat the statement, and an objection was sustained. An avowal was made that the witness would say, if permitted to answer: ''He said that he wouldn't worry if he had shot himself six or seven times more.''

On cross-examination, the witness said:

''Thelma came in after some beer and Shelby and her got in a little argument and Shelby walked back where the pistol was and picked it up and walked out and we followed him out, me and Clyde, and Shelby walked out to the side of the well and I went out and laid down on the running board of a car that was there. Shelby hung his head over the well and went to crying.''

Handcox and Clyde Conley were the only eye witnesses to the shooting. Conley died several months after the death of Clarke and before this action was instituted. This appears in the bill of exceptions:

''After the hearing of the foregoing witnesses no other witness appearing for the Defendant, but it appearing to the court that Ed Vanderpool, Velma G. Draughn, and Alouise Draughn had been summoned and failing to appear, it is now agreed by and between the Plaintiff and Defendant in this action that if they were present in court that each of them would testify that Ed Vanderpool, George Handcox, and Shelby Clarke came to the home and business place of Mollie Gayheart Draughn's on May 7, 1934, and that they all came in to the said place of business and Clyde Conley laid his pistol down on the counter in behind some object on the counter either an advertisement or a piece of merchandise. Sometime thereafter, Thelma Clarke, a sister of Shelby Clarke, drove up in a car with Beckham Combs and when they came in Thelma ordered some beer and her brother, Shelby, and her had a quarrel and Shelby picked up Clyde Conley's pistol and walked out and George Handcox and Clyde Conley followed him and in a few minutes they each heard two or three shots fired, and they

immediately went out and they saw Shelby Clarke in a shot condition, and his sister, Thelma went to him and the first words he said after they were out there was, 'I wish I had shot myself seven times more.' It is agreed that these witnesses will swear this subject to objections and exceptions.''

An objection to the purported statement of Shelby Clarke was sustained, and the rest of the foregoing was read to the jury as the depositions of Ed Vanderpool, Velma G. Draughn, and Alouise Draughn.

Shelby Clarke, Clyde Conley, and George Handcox were friends, and there is no proof that they had had any difficulty. In fact, all of the proof is to the contrary. Clarke was shot three times, and all of the bullets entered his chest. Handcox' testimony that Clarke shot and killed himself is uncontradicted. An effort is made to show that it would have been impossible for the deceased to have shot himself, considering the location of the wounds and the range of the bullets, but the witnesses only said it would have been difficult for the deceased to have shot himself while holding the pistol with his right hand. The court erred in refusing to admit the statements made by the deceased which indicated that he had shot himself intentionally. He made these statements immediately after the shooting and without being questioned.

"As a general rule declarations of a deceased person, whose death is the subject-matter of the civil action, as to the facts or circumstances attending his fatal injury, are not admissible; but where the statement of fact is a part of the res gestæ or, as here, is against interest, it is admissible as substantive evidence against those in privity with him.'' Reed v. Philpot's Adm'r, 235 Ky. 429, 31 S. W. (2d) 709, 711; Grand Lodge, Brotherhood of Railroad Trainmen v. Johnson, 228 Ky. 669, 15 S. W. (2d) 499.

A declaration made by a deceased person, even if self-serving, is admissible if it was a part of the res gestæ, and a declaration against interest is admissible whether or not it was part of the res gestæ. Consolidated Coach Corporation v. Earl's Adm'r, 263 Ky. 814, 94 S. W. (2d) 6; Cumberland Gasoline Corporation v. Fields' Adm'r, 258 Ky. 417, 80 S. W. (2d) 28; Louisville & Nashville Railroad Company v. Rowland's Adm'r, 215

Ky. 663, 286 S. W. 929; Reed v. Philpot's Adm'r, supra. Where the insured's declaration is not part of the res gestæ, its admissibility in evidence as a declaration against interest turns, in many jurisdictions, on the nature of the beneficiary's interest. By the great weight of authority, however, where the policy provides that the beneficiary is subject to change at any time by act of the insured, as did the policy in the instant case, such declarations are admissible, since the beneficiary has no vested interest until death of the insured without change of beneficiary. Knights of Maccabees v. Shields, 156 Ky. 270, 160 S. W: 1043, 49 L. R. A., N. S., 853; Annotation in 86 A. L. R. 146. Here the statement made by the deceased was both part of the res gestæ and an admission against interest, and should have been admitted in evidence. Whether or not without it the court should have sustained appellant's motion for a peremptory instruction need not be decided, but, with it admitted, the appellant was entitled to a directed verdict in its favor.

Judgment is reversed, for further proceedings consistent herewith.