## Lincoln Income Life Ins. Co. v. Mann et al.

May 26, 1944.

Ernest N. Fulton for appellant.

W. R. Gentry for appellees.

OPINION OF THE COURT BY JUDGE THOMAS—Reversing.

Will Mattingly, a colored man some fifty odd years of age, was employed by a farmer in Nelson County as an assistant in cutting and shocking corn on August 20, 1941. At about 2 p. m. on that day while so employed he dropped. dead in the field where he was at work, his demise being immediate.

On February 3, 1941, appellant, and defendant below, Lincoln Income Life Insurance Company, issued to him a combined industrial policy including death benefits in the total amount of $56 in consideration of stipulated weekly payments by the insured. The beneficiary in the policy was Mollie Robinson, the insured's sister. This contract will hereinafter be referred to as the first policy. On August 11 of the same year, nine days before the insured's death, appellant issued to him another industrial policy not covering as many risks as was contained in the first policy, but embracing death benefit to the amount of $195 in consideration of weekly premiums to be paid by the insured. The same beneficiary was named in it, and we will hereinafter refer to that policy as the second one.

After decedent's death his sister, the beneficiary in each policy, transferred all her interest in them to the plaintiffs, and appellees, George Mann and J. R. Smith, undertakers, located in Bardstown, Kentucky, and operating under the firm name of Modern Furniture Company. The firm made and furnished to defendant proof of death of the decedent and demanded full payment of the face value of each policy which was refused, following which this action was filed in the Nelson circuit court against defendant to recover the full amount of each policy aggregating $251, for which amount it prayed judgment with accumulated interest. Defendant admitted issuing the policies but based its nonliability upon certain

conditions printed on the reverse side of the face of the policy which each of them referred to and stated in the face thereof should be made a part of the policy the same as if written in its face. The result of which was to make each policy cover two pages instead of one, but each page was as much a part of the obligation incurred as if all of the stipulations and conditions were on the same page. One of the conditions of the first policy was and is that:

"The insured must be alive and in sound health and free from any injury when this Policy is delivered in person. * * * * and in the event of the death of the Insured from homicide or death within the first twelve (12) months from the date of the Policy, due directly or indirectly to any of the above named causes or diseases, (heart trouble being one) contracted after the date of this Policy, then the liability of the Company will be limited to one-fourth (¼) of the sum otherwise payable." (Our parenthesis.)

A condition of the second policy is: "The Applicant must be alive and in sound health and free from injury when this Policy is delivered in person, and no liability other than for the return of premiums paid is assumed by the Company for any accident occurring or illness contracted prior to the date of and the actual delivery of this Policy."

It was then averred in the answer that the insured at the date of the delivery of each of the policies to him was not in sound health but was at the date of each delivery afflicted with and suffering from heart trouble, and other diseases, which under the terms of the policy rendered them void. As to the first policy it was also averred that though the insured may have been in sound health at the time it was delivered on February 3, 1941, he nevertheless contracted such diseases after that date and died as a result therefrom within 12 months from the date of issue of the policy in which event the above-inserted condition of that policy limited the amount of recovery to "one-fourth (¼) of the sum otherwise payable," and therefore in no event should plaintiff recover exceeding one-fourth of the first policy, or $14.

In the third paragraph of the answer defendant offered to return all of the premiums paid by the insured under the first policy and to also pay plaintiffs $14, being one-fourth of the amount of that policy; but it denied

liability for any amount of the face of the second policy. At the close of the evidence defendant offered a peremptory instruction for the jury to find for it which the court overruled and refused to give, and then it offered instruction "B" saying: "The court instructs the jury to find for the plaintiff the amount of premiums paid on the policies herein and the further amount of $14 with interest from August 20, 1941." The court refused to give this instruction, to which ruling defendant excepted as it did also to the refusal to give its peremptory instruction on the whole case. The court then gave to the jury instructions Nos. 1 and 2, being similar but applicable to each policy separately. Each of them told the jury to find for the plaintiff the respective amounts of each policy "unless you believe from the evidence that on said date, (of the issue of the policy) Will Mattingly was not in sound health, and should you believe that on said date Will Mattingly was not in sound health, you will find for the defendant." (Our parenthesis.) That instruction apparently ignored the condition to which reference has been made in the first policy as to the incurring of afflictions producing unsoundness of health after the issue of the first policy and within 12 months therefrom, which under the condition would reduce the recoverable amount to one-fourth of the amount of the policy. However, instruction "B" offered by defendant expressly admitted that plaintiffs were entitled to recover under the inserted condition one-fourth of the amount of that policy.

Upon the issues so presented evidence was heard and under the instructions Nos. 1 and 2 of the court, supra, the jury returned a verdict against defendant for the entire face value of both policies amounting to $251. Defendant's motion for a new trial was overruled and from the judgment pronounced on the verdict it has filed a transcript of the record in this court with a motion for appeal, which is now sustained and the appeal granted.

From what has been said it is seen that the only issue of fact is as to the condition of the insured's health on the date of the delivery of each policy to him. The death certificate issued by the coroner of the county stated that deceased died of coronary occlusion, and such was the verdict of the coroner's jury, which under section 213.190, KRS, is prima facie evidence of the cause

of death, but may be impeached by other testimony. Defendant then introduced Dr. Keith Crume, a regular practicing physician located in Bardstown, Kentucky. He testified that he professionally examined the insured for the first time on April 19, 1941, at his office ''and found that he had hypertensive heart disease'' and which examination was made at the request of the employer of the insured, Morgan Yewell, Jr. The witness then stated that the affliction of the heart to which he referred was incurable. He then stated that he made a second examination in the early part of July, 1941, at the home of the insured and found him to be ''suffering with vague complaints, aching, some fever. He did not give me full information, and on either two or three days later I went down to see him again and found that his left testicle was—no that must have been on July 9th that I saw him for the second time and found that his left testicle was swollen to the point of rupture which it did two days later.'' He then stated that ''I took a blood test by Kahn test which was run at the State Board of Health Laboratory'' and discovered prominent and conclusive indications of the presence of syphilis. He gave him three treatments for his syphilitic condition and made later examinations of his patient on July 17, July 22 and July 30 of the same year. He then stated positively that on each date of his visit decedent was suffering from syphilis and an incurable heart disease.

Plaintiffs introduced no professional witness to overcome the testimony furnished by the death certificate, and the testimony of Dr. Crume. Instead they introduced a number of lay witnesses who testified as to their acquaintance with decedent and their more or less frequent meetings with him and that he appeared to them to be in good health; nor did either of them ever discover any affliction with which he may have been suffering, or dizziness or spells of any character. They testified also that so far as they knew he continued to work and, as we have seen, was working on the day of his sudden death. It is therefore contended by plaintiffs that the character of lay testimony they introduced was sufficient to raise the issue as to whether or not decedent was in sound or unsound health at the date of the delivery of each policy and to thereby authorize a submission to the jury of that issue, whilst the contrary contention is made by learned counsel for defendant. The case of Metropolitan Life Ins. Co. v. Crawford's Adm'x, 244 Ky. 730, 51 S. W.

2d 926, appears to be directly in point, the opinion rejecting the contention of plaintiffs and supporting that of defendant. The insured in that case died with a sudden attack of heart affliction while participating in a fox hunt. Physicians who had waited on him prior to that time testified that he had been suffering before the date of the policy from "mitral lesion of the heart." Nevertheless lay witnesses testified to his physical condition and activities after that day, but this court said with reference to such lay testimony that "all that this evidence shows is that Crawford was apparently a strong man, and took considerable exercise in hunting foxes, and as he fell and died from the effect of such exercise on his heart, there is absolutely no basis for the assumption that either his appearance or his ability to take exercise indicated that he was not suffering from heart disease. We are therefore constrained to hold that the evidence referred to (layman's testimony as to appearances) did not tend to contradict the evidence of the physicians that Crawford was suffering from a mitral lesion of the heart." We therefore directed a peremptory instruction in favor of the insurer.

To the same effect is the case of Jefferson Standard Life Insurance Company v. Pierce, 264 Ky. 698, 95 S. W. 2d 579. In those cases it was emphasized in the opinion that heart afflictions furnish no external symptoms of their presence and that it requires professional tests and investigations to reveal their presence. Therefore, the observations of lay witnesses as to the appearances and activities of the one so afflicted is insufficient to contradict the professional testimony on that issue.

The rule as so approved in the Crawford case, supra, is sustained by all text-writers in their discussions of the specific question, the latest of which is the text in 20 Am. Jur. 721, sec. 860, in which it is stated: "The rule permitting lay or nonexpert witnesses to testify to the apparent physical condition of a person which is open to ordinary observation by persons of common experience does not extend to permit such witnesses to testify as to the existence, nature, or character of latent conditions or to the existence of a particular disease which is discoverable, or the nature and character of which is determinable, only through the peculiar experience, knowledge, and training of a physician. Generally, opinions of such witnesses are limited to opinions as to physical con-

dition. A lay witness cannot, therefore, express an opinion or testify that an individual was or was not afflicted with the particular kind of disease, when the disease is not of such common occurrence or so readily recognizable by symptoms as to be capable of diagnosis or identification by persons of ordinary experience, knowledge, and training. However, according to most courts, in the case of common diseases and disabilities familiarity with which is a part of general knowledge, one who has observed the patient during his illness and has seen similar cases may testify as to what disease or ailment he had.''

The writer follows that excerpt with the reason for the rule which is, ''that a lay person of ordinary intelligence can determine the existence of a disease which is of frequent occurrence among people generally,'' an illustration of which is that the patient has fever but that the same witness would not be competent to testify as to what particular kind of fever, and that he might testify to other obvious facts concerning the disease or injury but all of which is open and observable to a layman as well as to a medical expert.

The same rule is similarly approved in an annotation in 93 A. L. R. 482, and in support of it there is cited cases from the courts of thirteen states, including Kentucky. The question involved in this action applicable to each of the policies was whether or not the insured was suffering from either of the afflictions stated by Dr. Crume at the time the policies were delivered to him. He testified that both of them were in existence from April, 1941, when he first saw the insured professionally and made his first examination, up to twelve days before the issuance of the second policy, and it is not pretended that either of them were cured or had disappeared when that policy was issued. There might, however, be faint doubt as to whether the existence of either of those diseases were developed at the time of the delivery of the first policy so as to impair his good health at that time. Therefore, learned counsel for defendant conceded the sufficiency of the evidence, as given by the layman witnesses, to raise an issue as to the condition of the insured's health when the first policy was delivered to him, and he offered the instruction ''B'' supra to that effect limiting the amount recoverable under the first policy as measured by one of its conditions as inserted supra.

Learned counsel for plaintiffs, while not disputing the

condition of the law as we have stated it, nevertheless rely on the two cases of Consolidated Coal Company v. Marcum's Adm'r, 289 Ky. 220, 158 S. W. 2d 150 and Equitable Life Assurance Society v. Obertate, 270 Ky. 518, 109 S. W. 2d 1206, which he contends qualify the broadly laid down rule as hereinbefore stated, and permits in cases like the instant one, the introduction of lay witnesses to overcome the testimony of the expert physician as to the determinable issue in the case. We have examined the two cases so relied on by counsel and find that the issues therein were entirely distinct from the one involved in this case. In the Marcum case—which was a procedure to recover compensation under our compensation statute—the question was, whether the injury sustained by the applicant arose out of and in the course of his employment, or whether it was the result of pre-existing disease. The physician witnesses in that case only testified, as stated in the opinion, that Marcum's disability was not "brought about or aggravated by the inhalation of impure air or noxious gases but on the contrary establishes conclusively that his disability was caused solely by pre-existing disease." The only question, therefore, in that case was not as to the existence of a pre-existing affliction but only whether or not the inhalation of noxious gases—for the results of which compensation was sought to be recovered—produced the disability either directly or indirectly. It was held that it was competent for layman to testify as to the condition of the applicant up to the time he became disabled, after inhaling the gas, and his condition thereafter, in order to combat the theory of the physicians as to the probable consequences of the pre-existing disease.

Likewise in the Obertate case the only question involved was, whether or not the insured falsely answered questions propounded to him concerning his health, and other material matters, but the physician witness for defendant in that case testified that when he examined the insured he found slight enlargement of the prostate gland "but there was no way to tell from the examination of how long standing it was [270 Ky. 518, 109 S. W. 2d 1207]." He did not examine him to discover the existence of venereal disease and that "he could not say that he (insured) had heart trouble because he made no examination of that kind." (Our parenthesis.) The lay witnesses therefore in that case who testified as to the appearances and activities of the insured did not con-

tradict any testimony by the physician witness of the nature and character of that given by Dr. Crume in this case, i. e. as to the existence of a hidden and obscured disease discoverable only by expert witnesses by the use of scientific methods and the nature of which was not calculated to reveal itself to a layman in casual meetings and observation of the one so afflicted.

But it is argued that stipulations in each policy prescribing when the insured would be entitled to the full benefit thereof have the effect to nullify the conditions contained in them as defeating the right of recovery or measuring its amount to be paid which constitutes the only defense herein made. Such stipulation as contained in the first policy says: "This policy is in full benefit after six (6) months"; and as contained in the second policy, "This policy is in full benefit from date of issue." Clearly, such expressions were not intended to nullify and destroy any other portion of the policy, but only to state when the insured should be entitled to the full benefits of the policy as qualified by all of its terms.

It therefore follows that the court should have sustained defendant's motion for a peremptory instruction for a verdict in its favor as based on the second policy and that all the plaintiffs are entitled to recover under the first policy is the amount stated in instruction "B" offered by defendant.

Wherefore, the judgment is reversed with the directions for proceeding not inconsistent with this opinion.

Judges Fulton and Tilford did not sit in the determination of this case.