## Metropolitan Life Ins. Co. v. Ackan.

May 22, 1945.

Wm. Marshall Bullitt, William Mellor, and Bullitt & Middleton for appellant.

Benjamin Mazin for appellee.

OPINION OF THE COURT BY JUDGE HARRIS — Affirming.

This is an action by the appellee beneficiary to enforce the following double indemnity provisions of four policies which were issued by the appellant on the life of her husband, Fred C. Ackan, who died on January 19, 1944, following injuries sustained by him on the preceding day when the automobile which he was driving collided with a street car:

"Upon receipt of due proof that Insured * * * has sustained * * * bodily injuries, solely through external, violent and accidental means, resulting, directly and independently of all other causes, in the death of the Insured * * * the Company will pay * * * an Accidental Death Benefit equal to the amount of insurance * * *.

"No Accidental Death Benefit will be paid * * * if death is caused or contributed to, directly or indirectly or wholly or partially by disease, or by bodily or mental infirmity * * *."

The jury having found in her favor, and judgment having been entered accordingly, the insurance company has appealed on two grounds: (a) The court should have directed a verdict in its favor, and (b) incompetent and irrelevant testimony.

The collision occurred about 8:30 in the forenoon. As a result of the impact the insured suffered a severe shock and bleeding of his nose. That afternoon he became unconscious and was put to bed, where he remained until his death on the following day. Between the time of the accident and his death he suffered pains in his chest, and bled from his nose, mouth and rectum. When visited by Dr. Crutcher on the day of the accident he was, to quote the doctor, "In pretty bad shape. He seemed to have some fever, was practically helpless, and the next day he died." When visited by the doctor on the following day he was in a state of coma, and so remained until he died. The doctor also testified that in his opinion the insured's death was caused by coronary thrombosis, and that shock could have caused the thrombosis. At another point in his testimony he gave it as his opinion that it was the shock, coupled with a pre-existing hypertensitive heart condition which brought about the insured's death. In the death certificate he said the cause of death was coronary thrombosis. In addition to the doctor's testimony there was affirmative lay testimony that the insured had had no previous injury or illness, and there was no evidence to the contrary.

(a) The appellant argues that on the authority of Lincoln Income Life Ins. Co. v. Mann et al., 297 Ky. 681, 180 S. W. 2d 877; National Life & Accident Insurance Co. v. Kendall, 248 Ky. 768, 59 S. W. 2d 1009; Pruden-

tial Ins. Co. of America v. Gaines, 271 Ky. 496, 112 S. W. 2d 666; and Nugent et al. v. Nugent's Ex'r et al., 281 Ky. 263, 135 S. W. 2d 877, the testimony of Dr. Crutcher entitled it to a peremptory instruction.

We shall now explore those authorities and determine their availability under the testimony before us.

The Mann case involved two policies, dated February 3, 1941, and August 11, 1941, respectively. The first contained a provision that:

" 'The insured must be alive and in sound health and free from any injury when this Policy is delivered in person. * * * and in the event of the death of the Insured from homicide or death within the first twelve (12) months from the date of the Policy, due directly or indirectly to any of the above named causes or diseases, (heart trouble being one) contracted after the date of this Policy, then the liability of the Company will be limited to one-fourth (¼) of the sum otherwise payable.' "

A provision of the second policy was:

" 'The Applicant must be alive and in sound health and free from injury when this Policy is delivered in person, and no liability other than for the return of premiums paid is assumed by the Company for any accident occurring or illness contracted prior to the date of and the actual delivery of this Policy.' "

The only issue of fact in the case was that of the condition of the insured's health on the date of the delivery of each policy to him. The death certificate issued by the coroner gave August 20, 1941, as the date and coronary occlusion as the cause of death. Dr. Crume testified that he examined the insured on April 19, 1941, and found him to be suffering from an incurable hypertensive heart disease; that he examined him again on or about July 9, 1941, and found him to be suffering from various complaints—aching, some fever, and swollen left testicle, which ruptured two or three days later. He further stated that by means of a blood test he discovered conclusive indications of the presence of syphilis, for which he gave treatments on July 17, 22, and 30. The testimony in opposition was merely that of certain lay witnesses to the effect that the insured appeared to them to be in good health; that they had never discovered any

affliction with which he might have been suffering, or any dizziness or spells of any kind; that so far as they knew he continued to work until he dropped dead on August 20, 1941, while cutting and shucking corn.

This lay testimony, so the plaintiffs contended, was sufficient to raise an issue for the jury as to whether the insured was in sound health on the date of the delivery of each policy. In disposing of that contention we went no further than to say that since heart disease presents to the eye of the layman no external evidence of its presence, and is "determinable only through the peculiar experience, knowledge, and training of a physician," the testimony of the lay witnesses was not sufficient to contradict the direct and positive testimony of Dr. Crume, or to entitle the plaintiffs to a submission of the case to the jury. We did not hold that the testimony of the lay witnesses with respect to the physical appearance of the insured, or with respect to the absence of any visible evidence of illness, was incompetent. In fact, the opinion as a whole implies the competency of such testimony generally, but denied its sufficiency in that case.

The policy of insurance under consideration in appellant's cited case of National Life Insurance Co. v. Kendall provided that the company should be liable if "death resulted within ninety days, directly and independently of all other causes from bodily injury, etc., effected directly through external, violent, and purely accidental means, and not caused by or contributed to directly or indirectly, or wholly or partially, by any disease or mental infirmity contracted either before or after the injury." The question presented was whether the insured's death was the result of a head injury which he had sustained in an accident, or of meningitis, a disease. The lay witnesses did not undertake to testify as to the cause of death, but simply as to the nature and circumstances of the injury. The only witnesses who testified as to the cause of the insured's death were the doctors, who agreed that it was caused by the disease.

In passing upon the sufficiency of that evidence to carry the plaintiff's case to the jury, we said:

"The proof shows young Kendall died from disease, not from accident, and we have looked in vain for evidence that the accident caused the disease. * * * Fol-

lowing as closely as it did after the occurence of this accident, there comes a supposition that the disease is in some way a result of the accident, but a supposition is not enough; a judgment cannot be rested on a supposition.''

The appellant contends that according to the testimony of Dr. Crutcher the insured's death was caused by the combined and cooperative effect of shock and of a pre-existing hypertensitive heart. From this it argues that in view of the terms of the policy sued on and of what we said in the Kendall case, it was entitled to a peremptory instruction.

The weakness of this argument lies in a misapprehension on the part of appellant as to the effect of what we said in the Kendall case, or in an erroneous conception of what Dr. Crutcher testified to in the present case. In the Kendall case the medical testimony disclosed that there are different types of meningitis. Some of the testimony was positive that the insured died of the meningococcus type, and that there was no way of tracing it to the insured's injury. There was, however, some medical testimony that the accident might or might not have been sufficient to cause meningitis to develop. In this connection one of the doctors said: ''Of course, that condition, pain in the head, had existed since the injury, and it was natural for us to take those two together, the pain from the injury and the general nervous condition, with the spinal meningitis—connect them together.'' It was this latter evidence which we termed suppositional and insufficient to rest a judgment on. In the present case the only portion of Dr. Crutcher's testimony which could be classified as suppositional is that which undertakes to associate the insured's death with a pre-existing hypertensitive heart. There is no testimony that Dr. Crutcher ever examined him for a hypertensitive heart or that he was suffering from any such condition. That the doctor's statement with respect to that condition was founded upon mere supposition is reflected in the following question and answer:

''Q. You spoke of a hypertensitive condition he had prior to the accident? A. I said it was my opinion he probably had a hypertensitive heart.''

In the cited case of Prudential Insurance Company

v. Gaines there was positive medical testimony that the insured's death was caused by heart disease, and that he had been treated for that ailment prior to his accident. The only medical testimony to the contrary was that of a doctor whose statements upon the trial were utterly repugnant to statements which he had previously made in certifying the cause of the insured's death. Under those circumstances we held that this testimony, although contradictory of the doctor's previous certification, was sufficient to carry the case to the jury, but insufficient to support its verdict.

In the instant case there is no positive medical testimony that the insured died of or even had a pre-existing disease. This being so, the Gaines case is not controlling.

(b) Appellant complains of the hypothetical question which was propounded to Dr. Crutcher, and cites Aetna Life Insurance Co. v. Bethel, 140 Ky. 609, 131 S. W. 523. This objection is not well made for the simple reason that the instant the question was propounded the appellant objected, and the witness did not answer the question. The statement which the doctor made in the first answer following the hypothetical question shows on its face that he was basing his opinion on such examination as he personally made of the patient and on the history which he obtained at the time he made the examination. The next complaint is directed at question eleven. If it be assumed that the question as framed was improper, the error was harmless because the answer to it was merely a repetition of what the doctor had said at another point in his testimony.

Most of the testimony given by the undertaker was competent, and any error that may have been committed in permitting him to express an opinion is not of sufficient moment or prejudice to justify a new trial.

On the whole case it is our view that the competent testimony offered on behalf of the appellee was sufficient to take the case to the jury and to sustain its verdict, and that the scintilla rule invoked in the Nugent case has no application here.

Judgment affirmed.